UNIVERSAL REINSURANCE
CORP., Respondent,

v.

Gregg GREENLEAF, et al., Appellants.

No. 58682.

Missouri Court of Appeals,
Eastern District,
Division Four.

Jan. 7, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 10, 1992.

Application to Transfer Denied
March 24, 1992.

R. Gerald Barris, Springfield, Ill. and Roger C. Denton, St. Louis, for appellants.

Ted L. Perryman and Mark R. Bates, St. Louis, for respondent.

CARL R. GAERTNER, Judge.

This declaratory judgment action involves a question of coverage under a products liability insurance policy. Plaintiff, Universal Reinsurance Corporation, is the successor of Bellefonte Insurance Company which issued a products liability policy to the Choctaw Manufacturing Company, a Florida corporation, and its officers and shareholders, defendants Bobby Padgett and Al Seiffert, in 1980. Choctaw designed, manufactured, and sold a stick steering mechanism which was incorporated into a fishing boat manufactured by Chrysler Corporation. This boat was purchased by appellants, Gregg and Laura Greenleaf on June 1, 1983. Choctaw Manufacturing Company had ceased doing business and the corporation was dissolved on July 29, 1981. On June 12, 1983, the boat was involved in an accident causing bodily injuries to Gregg and Laura Greenleaf and the death of their two year old son. In May, 1986 the Greenleafs filed suit in the Circuit Court of the City of St. Louis against Bobby Padgett and Al Seiffert, the Chrysler Corporation, and Ireland Keith Ellis, the dealer who sold the boat. Universal denied that coverage existed under the policy issued by its predecessor because the accident did not occur during the period of time that the policy was in force. Prior to the trial of the Greenleaf's lawsuit, appellants settled with Chrysler and entered into an agreement with Padgett and Seiffert pursuant to § 537.065 RSMo. 1986, to limit any recovery against them to the proceeds recoverable under the Bellefonte Insurance policy. In return, Padgett and Seiffert agreed not to contest liability or damages. An uncontested judgment against Padgett and Seiffert was entered in the amount of $1,000,000. The case was tried against the dealer, Ellis, and resulted in a jury verdict in favor of Ellis.

On July 20, 1988, while the underlying lawsuit was pending, Universal instituted this declaratory judgment action against Padgett, Seiffert, and the Greenleafs (herein defendants). Universal alleged that the Bellefonte policy covered the period from August 26, 1980 thorugh August 25, 1981, so it did not cover the July 12, 1983 accident. The defendants counter-claimed, seeking a declaration that coverage was afforded or a reformation of the contract. The trial court ruled in favor of Universal. Only the Greenleafs appealed. We affirm.

The policy provides product liability coverage through the following language:

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

    a. Bodily injury, or

    b. Property damage,

to which this insurance applies, caused by an occurrence, if the bodily injury or property damage is included within the completed operation's hazard, or the product's hazard. . . .

The key words in this coverage provision "bodily injury" and "occurrence," are defined as follows:

"Bodily Injury"—means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom.

"Occurrence"—means an accident, including continuous or repeated exposure to the conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.

In issuing policies, the usual and customary practice of Bellefonte's general agent is to fill out the declaration page of the policy with information contained in an application for insurance received from the insured or its agent, and to select appropriate coverage and endorsement forms. These papers are attached to a pre-printed form referred to as the "policy jacket," which then constitutes the complete insurance contract. The declaration page contains the name of the insured, a description of the insured's business, the policy period, the type of insurance provided and the amount of the annual premium. The insuring agreement is contained on a pre-printed form which also includes exclusions and limitations of liability. The definitions are found in the policy jacket, on the front of which is stated "THIS POLICY JACKET WITH THE DECLARATIONS PAGE AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF COMPLETES THIS POLICY."

The controversy in this case revolves around the appellants' contention that the evidence was insufficient to prove the policy jacket containing the definitions was attached to the other papers which Mr. Padgett received after purchasing the insurance. They argue that since Universal failed to prove that Padgett and Seiffert received the policy jacket, the definitions that limit coverage to a bodily injury resulting from an accident occurring during the policy period do not apply to their injuries arising from a defective product manufactured during the policy period.

Appellants first argue that the trial court erred in placing the burden of proving the existence of coverage upon them rather than requiring Universal, the plaintiff, to prove the absence of coverage. The trial court concluded the evidence failed to provide "a factual basis for a finding whether the jacket was attached to the copy of the policy received by the defendants." The court based this conclusion on the evidence that the policy had been lost. Mr. Seiffert had no recollection of the policy. Mr. Padgett had no distinct recollection if the jacket was attached to the remainder of the policy papers, but he thought he would have remembered it if he had seen it. The court admitted testimony from the employee of Bellefonte's general agent who was responsible for assembling, counter-signing, and mailing insurance policies. She testified to the usual and customary procedure of attaching the jacket and that she had to lift the jacket in order to counter-sign the policy. The trial court accepted this testimony and expressly found Mr. Padgett's testimony "not persuasive." The

court concluded that the defendants failed to carry their burden that they had not received the policy jacket containing the definitions or that the parties intended any coverage different than that which was unambiguously expressed by the definitions.

The trial court did not err in placing the burden of proving coverage upon the defendants in the declaratory judgment action. In such an action, the burden of proof usually rests where it would have been placed had a different type of suit been brought. *M.F.A. Mutual Ins. Co. v. Quinn*, 259 S.W.2d 854, 858 (Mo.App.1953). Thus, the general rule imposing the burden of proving coverage under an insurance policy upon the parties seeking to recover under the policy holds true even though the insurer who denies coverage instituted the declaratory judgment action. *Id. See also, State Farm Mutual Automobile Liability Ins. Co. v. St. Louis County*, 601 S.W.2d 291, 294 n. 1 (Mo.App.1980); *State Farm Mutual Automobile Liability Ins. Co. v. Johnson*, 586 S.W.2d 47, 51–52 (Mo. App.1979).

Appellants argue and rely upon decisions holding the burden of proving an exclusion to be unambiguously effective is upon the insurer. This eminently correct statement of the law totally ignores the fact that this case involves policy definitions, not policy exclusions. The issue here is not whether by virtue of a policy exclusion a particular injury or occurrence is excluded from an insurance coverage otherwise applicable. Rather, the question is whether the insurance coverage applicable to the injury or occurrence exists. Unless such coverage is established, the effect of a policy exclusion is never reached.

The trial court's conclusion that defendants failed to carry their burden of proving that definitions limiting coverage to injuries occurring during the policy period were not an integral part of the insuring agreement intended by the parties is amply supported by the evidence.

We also reject appellants' contention that the trial court erred in finding Gerald Rogers to be the agent of Padgett and Seiffert. Rogers, an independent insurance agent with sixteen years experience, was contacted by Padgett to obtain products liability insurance. Rogers solicited bids from several insurance carriers. He was not an agent of the Bellefonte Insurance Company or of the broker, Crump–London Underwriters, Inc., which issued the policy. The appellants' contention is predicated upon a Florida statute, FLA.STAT. § 626.746 (1977) (repealed 1982) which imposes civil liability upon an insurer for the acts of an unlicensed insurance agent to whom it has furnished blank forms, applications, and supplies. That statute, which appears to be predicated upon the theory of implied or apparent agency, has no application here. The insurer, Bellefonte, furnished forms and applications to Crump–London, its licensed general agent. Bellefonte did not furnish anything to Rogers. The temporary binding of coverage expressly stated that it was issued under the authority of Crump–London.

Appellants also complain of the trial court's consideration of evidence of custom and usage concerning the assembly and mailing of insurance policies by the Crump–London employee to show that Crump–London mailed the policy jacket with the policy. Recognizing the impracticality of establishing proof of mailing of a particular item by offices which handle a large volume of mail, courts have admitted proof of regular and systematic custom and usage to establish mailing. *Lake St. Louis Community Assoc. v. Ringwald*, 652 S.W.2d 158, 160–61 (Mo.App.1983); *First National Bank of Independence v. Mid–Century Ins. Co.*, 559 S.W.2d 50, 52 (Mo.App.1977). Point denied.

Next appellants fault the trial court's finding that the policy, and its definitions, was not ambiguous. In *Dennis Cain Motor Co. v. Universal Underwriters Ins. Co.*, 614 S.W.2d 275, 277 (Mo.App. 1981), the court held that policy language identical to that contained in the Bellefonte policy was unambiguous.

That court stated:

Language similar to that defining bodily injury here * * * has been held to limit an insurance policy to injuries arising during the policy period and to exclude from coverage injuries which occur subsequent to that period, even though the injuries may have been caused by acts done while the policy was in effect. *American Fidelity Fire Ins. Co. v. Travelers Companies*, 93 Cal.App.3d 787, 155 Cal.Rptr. 900, 904 (Cal.App.1979); *Utica Mutual Ins. Co. v. Tuscaloosa Motor Co., Inc.*, 295 Ala. 309, 329 So.2d 82 (1976).

An argument similar to appellants' argument has also been rejected under Florida law. In *Travelers Ins. Co. v. C.J. Gayfers & Co.*, 366 So.2d 1199 (Fla.App.1979), the court ruled that an insurance policy using language similar to that of the Bellefonte policy was not ambiguous and could not be interpreted as providing coverage for damage occurring beyond the policy period even though the causative negligence occurred during that period.

Thus, whether the policy language is construed under Florida law or Missouri law, no ambiguity exists. This being the case, there is no justification for resort to the "reasonable expectations" doctrine. *Rodriquez v. General Accident Ins. Co.*, 808 S.W.2d 379, 382 (Mo. banc 1991); *Travelers Ins. Co. v. C.J. Gayfers*, 366 So.2d at 1201. As stated in the *Travelers* opinion:

Insurance contracts commonly provide coverage for a specified period of time. An insured would expect to find a time limitation expressed in the policy, and would not reasonably assume, after reading only the completed operations definition, that he could cease paying premiums but enjoy completed operations coverage indefinitely. And when the insured reads the entire Travelers' policy, the definition of property damage clearly advises that coverage damage must "occur during the policy period," or be "caused by an occurrence during the policy period."

■ Finally, the Greenleafs argue that their claim should be covered under a theory of breach of warranty under the policy definition of products hazard.

Product hazard includes bodily injury and property damage arising out of the named insureds products or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury occurs away from the premises owned by or rented to the name insured and after the physical possession of the product has been relinquished to others.

Appellants point to the phrase "made at any time with respect thereto" and argue that an ambiguity is created where one definition does not limit the time in which an actionable representation must be made while another definition limits the coverage to injuries occurring during the policy period. We perceive no inconsistency or ambiguity. Whether a representation was made prior to the policy period or whether the product was manufactured prior thereto, coverage is nevertheless limited to bodily injuries occurring during that period. If we were to accept appellants' argument a non-existent inconsistency would be created by defining "bodily injury" as having different meanings in different sections of one insurance policy providing a single type of coverage.

The findings of fact made by the trial court were supported by the evidence, and the trial court did not erroneously declare or apply the law. Accordingly, the judgment is affirmed.

SMITH, P.J., and SATZ, J., concur.