## CITIZENS INSURANCE COMPANY OF AMERICA, Plaintiff/Respondent,

v.

## Gary J. LEIENDECKER and Charlotte Ann Redel Leiendecker, Defendants, and Great American Reserve Insurance Co., Defendant/Appellant.

### No. 71213.

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 24, 1998.

Frank J. Kaveney, Richard D. Schreiber, St. Louis, for appellant.

Russell F. Watters, Steven H. Schwartz, T. Michael Ward, Brown & James, P.C., St. Louis, for respondent.

CRANE, Presiding Judge.

This declaratory judgment action involves a question of coverage for emotional distress under the "bodily injury" coverage of a homeowners insurance policy. The insureds, Gary Leiendecker and Charlotte Leiendecker, were covered by a homeowners policy issued by plaintiff Citizens Insurance Company of America (Citizens). The insureds had used and recommended to other individuals the services of Richard Martin. Martin ob-

tained monies from these individuals for single premium life insurance policies, but he did not obtain the policies.

*Damage Action*

In 1992 these individuals (hereinafter the claimants) filed nine actions in the Circuit Court of the City of St. Louis against Jefferson National Life Insurance Company (JNL), the predecessor of defendant Great American Reserve Insurance Company (both of which will be referred to as JNL), other life insurance companies, Martin, and a bank. The claimants alleged that between 1985 and 1991 Martin had defrauded them into giving him monies to purchase single premium life insurance policies from various insurance companies, including JNL. The claimants alleged fraud, conversion, breach of contract, promissory estoppel and negligent misrepresentation against the life insurance companies. The claimants sought damages from the life insurance companies on the theories that the life insurance companies were vicariously liable for Martin's acts and were negligent in hiring and retaining Martin as their agent.

The claimants also alleged that the conduct of each of the insurance companies and the bank, individually and through their agents, involved an unreasonable risk of causing them to suffer emotional distress, that the emotional distress was directly caused by each defendant's conduct, "and is medically diagnosable and of sufficient severity so as to be medically significant."

JNL filed third-party claims for contribution against the insureds in each of the city circuit court actions alleging that the insureds were negligent in recommending Martin to the claimants. Citizens provided an attorney to defend the insureds while reserving its right to deny coverage and to seek a declaration of no coverage.

On January 2, 1996 the insureds and JNL entered into an agreement pursuant to Section 537.065 RSMo 1994 in which JNL agreed not to execute on any judgment it might eventually obtain against the insureds except to the extent of their insurance coverage under the Citizens policy. The agreement provided:

JNL agrees, in the event it obtains judgment on its Motions for Summary Judgment against the Leiendeckers, that neither JNL nor any person, firm or corporation claiming by or through it, shall levy execution or garnishment or otherwise provided by law attempting to collect personally either individually or jointly against the Leiendeckers or any of their assets, except as against Citizens or any other insurer which might insure the legal liability of the Leiendeckers with respect to the claims asserted by JNL in the Third–Party Petitions.

JNL filed a motion for summary judgment against the insureds who admitted the allegations made therein. The trial court entered a partial summary judgment as to liability, but reserved ruling as to damages. JNL settled with all claimants with cash payments.

*Declaratory Judgment Action*

While the damage action was proceeding, Citizens filed a petition for declaratory judgment against JNL and the insureds in the Circuit Court of St. Louis County. Citizens sought a declaration that the Citizens homeowners policy did not provide coverage or indemnity for the claims asserted in defendant's third-party petition. After JNL had settled with the claimants, Citizens moved for summary judgment on the grounds that its homeowners policy did not cover any of JNL's claims for contribution against the insureds. In its response JNL agreed that there was no coverage for economic damages and that there were no allegations of personal injury or property damage. However, JNL contended that the allegations of emotional distress in each petition constituted "bodily injury" as that term is defined in Citizens' policy.

Thereafter, with the consent of all parties, Citizens dismissed without prejudice its claims against the insureds. The trial court granted summary judgment in Citizens' favor finding that there is no coverage under Citizens' homeowners policy for any of the allegations made against the insureds in JNL's third party actions. JNL appeals from this judgment.

*Discussion*

On appeal JNL asserts the trial court erred in entering summary judgment because there was no justiciable controversy and Citizens did not have standing to bring suit against JNL. JNL also argues that there were general issues of material fact on whether some of the underlying claims for damages for emotional distress were claims for "bodily injury" within the meaning of the policy and that the underlying claims for damages caused by negligent infliction of emotional distress were claims for "bodily injury" within the meaning of the policy. We find no error and affirm.[1]

I. *Justiciable Controversy*

■ In its first point JNL claims that there was no justiciable controversy because the claims for contribution (a) had not been reduced to judgment, (b) imposed no present duty of indemnification upon Citizens, and (c) remained hypothetical and speculative. JNL contends that the trial court should not have decided the matter until the amount, if any, of the Leiendeckers' liability to JNL for emotional distress damages arising from negligence was conclusively established.

■ The insured first accepted Citizens' tender of a defense under a reservation of rights, but later, when Citizens filed this declaratory judgment action, substituted their own counsel. When insureds exercise their right to reject defense by their insurer, the insurer may file a declaratory judgment action to determine the scope of its policy's coverage. *Ballmer v. Ballmer*, 923 S.W.2d 365, 369 (Mo.App.1996); *State ex rel. Mid-Century Ins. Co., Inc. v. McKelvey*, 666 S.W.2d 457, 459 (Mo.App.1984). *See also Whitehead v. Lakeside Hosp. Assn.*, 844 S.W.2d 475, 479 (Mo.App.1992). Accordingly, it is not necessary that the underlying lawsuit be fully resolved before the declaratory judgment action may be decided.

Further, the claims for contribution were not hypothetical or speculative. JNL settled the claimants' lawsuits in lump sum amounts without allocating damages according to any particular theory of liability. JNL's contribution claim against the insureds alleges that it is entitled to recover up to 100% of any damages assessed against it from the insureds. Partial summary judgment on liability has been entered against the insureds. The declaratory judgment action presented a justiciable controversy. Point one is denied.

II. *Standing*

■ For its second point JNL contends that Citizens had no standing to sue JNL once Citizens had dismissed its insureds from the action. JNL did not raise standing in the trial court. However, lack of standing cannot be waived and may be considered by the court *sua sponte*. *Brock v. City of St. Louis*, 724 S.W.2d 721, 725 (Mo.App.1987).

Standing is a concept utilized to determine if a party is sufficiently affected so as to insure that a justiciable controversy is presented to the court. *Farmers Ins. Co., Inc. v. Miller*, 926 S.W.2d 104, 106 (Mo.App. 1996). Under the Declaratory Judgment Act, a party has standing to have any question of construction or validity arising under the contract determined if the person is "[a]ny person interested under a ... written contract ... or whose rights, status or other legal relations are affected by a ... contract." Section 527.020 RSMo 1994. Under this statute a plaintiff must be a party or a third party beneficiary of the contract. *Farmers Ins. Co.*, 926 S.W.2d at 107.

JNL relies on *Farmers Ins. Co., St. Paul Fire & Marine v. Med. Protective Co.*, 675 S.W.2d 665 (Mo.App.1984), and *American Economy Ins. Co. v. Ledbetter*, 903 S.W.2d 272 (Mo.App.1995) to support its claim that Citizens has no standing. However, in these cases the respective plaintiffs were not parties to or beneficiaries of the insurance policy in which the plaintiffs sought declaratory relief. In contrast, in this case, Citizens seeks a determination of coverage under its own policy, a contract to which Citizens is a party. JNL's status as a defendant does not affect

---

1. We originally transferred this matter to the Supreme Court because of the conflict between the Eastern and Western districts on whether "bodily injury" as defined in the policy is ambig-uous and includes mental suffering. The Missouri Supreme Court sustained the parties' Joint Motion to Retransfer Case to this court.

Citizens' standing to bring a declaratory judgment action to construe its own policy.

■ Likewise the absence of the insureds does not affect Citizens' standing to bring this action. Rather, that is a question of whether all persons who have or claim any interest which would be affected by the declaration have been joined.[2] Rule 87.04. The rules of civil practice and procedure relating to the joinder of necessary and indispensable parties apply to declaratory judgment actions. A person is a necessary party if that person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may, as a practical matter, impair or impede the person's ability to protect that interest. Rule 52.04. JNL had agreed not to execute on the insureds or their assets and to collect only against the insurance proceeds. The insureds did not claim any interest in the matter at the time they were dismissed from the declaratory judgment action. JNL could not collect damages against the insureds whether Citizens prevailed or not in the declaratory judgment action. JNL was the party who could collect under the policy if coverage had been established. *See* Section 537.065.

Citizens had standing to bring this declaratory judgment action. Point two is denied.

III. *Factual Dispute*

■ For its third point JNL asserts that there existed genuine issues of material fact as to whether some of the underlying claims for damages for emotional distress were claims for "bodily injury" within the meaning of Citizens' homeowners insurance policy. JNL contends that, because this is an issue of first impression in Missouri, "it cannot be decided on summary judgment as an abstract matter of law, but only after trial on a full factual record." It argues that a factual record is required on the cause and physical manifestations of claimants' emotional distress. We disagree.

■ A matter of first impression is appropriate for resolution by summary judgment.

---

**2.** The issue of whether there has been failure to join a necessary and indispensable party is jurisdictional and may be raised at any time, even on

Disputes arising from the interpretation and application of insurance contracts are matters of law for the court where there are no underlying facts in dispute. *Centermark Properties v. Home Indem.*, 897 S.W.2d 98, 100 (Mo.App.1995).

An insurer's duty to defend is determined from the allegations of the petition and the provisions of the policy. *Shelter Mut. Ins. Co. v. Shepherd*, 928 S.W.2d 6, 8 (Mo.App. 1996). The underlying petitions alleged in separate counts economic losses as a result of fraud, conversion, tortious breach of contract, and promissory estoppel. The underlying petitions further alleged that, as a result of the life insurance companies' and Martin's conduct, plaintiffs suffered emotional distress which was medically diagnosable and of sufficient severity so as to be medically significant. The claimants sought damages for negligent infliction of emotional distress. They did not seek damages for any physical injury. The policy provides coverage for "bodily injury." Whether the underlying petitions have alleged a claim which is covered by the term "bodily injury" as defined in the policy is a legal question which is not dependent on a factual determination of the causes and physical manifestations of claimants' alleged emotional distress. Point three is denied.

IV. *"Bodily injury"*

■ For its fourth point JNL asserts the trial court erred in entering summary judgment for Citizens because the underlying claims for damages caused by negligent infliction of emotional distress were claims for "bodily injury" covered by the policy. It argues that we should follow the Western District in *Lanigan v. Snowden*, 938 S.W.2d 330 (Mo.App.1997) and the few other jurisdictions which have so held, rather than follow the majority of jurisdictions which find such claims not covered as "bodily injury." We disagree.

The Citizens policy provides:

Coverage E—Personal Liability

---

appeal. Rule 55.27(g)(2); *Obaidullah v. Kabir*, 882 S.W.2d 229, 230–31 (Mo.App.1994).

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies, we will:

1. pay up to our limit of liability for the damages for which the **insured** is legally liable; and

2. provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the **occurrence** equals our limit of liability.

The definitions section of the policy defines "bodily injury" as follows: " 'Bodily injury' means bodily harm, sickness or disease, including required care, loss of services and death that results." This section also defines "occurrence": " 'Occurrence' means an accident, including exposure to conditions, which results, during the policy period, in: a. bodily injury; or b. property damage." The policy further provides "personal injury" coverage under its "Homeowner's–Plus" endorsement, which amends the policy definition of "bodily injury":

PERSONAL INJURY COVERAGE

Under Coverage E-Personal Liability, definition bodily injury is amended to include personal injury.

"Personal Injury" means injury arising out of one or more of the following offenses:

a. false arrest, detention or imprisonment, or malicious prosecution;

b. libel, slander or defamation of character; or

c. invasion of privacy, wrongful eviction or wrongful entry.

The burden of proving coverage is upon JNL, the party who would seek to recover under the policy, even though the insurer, Citizens, brought the declaratory judgment action. *Universal Reinsurance Corp. v. Greenleaf*, 824 S.W.2d 80, 83 (Mo. App.1992). JNL has the burden of proving that the definition of bodily injury includes claims for emotional distress. *Id.*

JNL argues that the term "bodily injury" as defined in the basic policy is ambiguous and includes emotional distress. The language of an insurance policy is ambiguous when it is reasonably and fairly open to different constructions. *Krombach v. Mayflower Insurance Co. Ltd.*, 827 S.W.2d 208, 210 (Mo. banc 1992). Ambiguity arises when there is duplicity, indistinctness, or uncertainty of meaning of words used in the policy. *Id.* In interpreting whether the language used in the policy is ambiguous, we give words the meaning that would normally be understood by the average lay person, unless it plainly appears that the technical meaning is intended. *Chase Resorts, Inc. v. Safety Mut. Cas. Corp.*, 869 S.W.2d 145, 150 (Mo. App.1993). An allegedly ambiguous phrase is not considered in isolation, but by reading the policy as a whole with reference to the isolated words. *Id.* When the provisions of the policy are in fact ambiguous, they are construed against the insurer. *Krombach* 827 S.W.2d at 210. *See also Gulf Insurance Co. v. Noble Broadcast*, 936 S.W.2d 810, 814 (Mo. banc 1997); *Peters v. Employers Mutual Casualty Company*, 853 S.W.2d 300, 302 (Mo. banc 1993). If insurance policies are unambiguous, rules of construction do not apply and we must enforce the contract as written. *Krombach*, 827 S.W.2d at 210.

No Missouri supreme court case has addressed the issue raised in this appeal. Two Eastern District cases have held that "bodily injury" as defined in two different insurance policies is limited to physical injury and does not include a claim for loss of consortium. *Ward v. American Family Insurance Company*, 783 S.W.2d 921 (Mo.App.1989); *Fildes v. State Farm Mut. Auto. Ins. Co.*, 873 S.W.2d 883 (Mo.App.1994). In *Ward*, the policy defined "bodily injury" as "bodily injury to or sickness, disease or death of any person." *Ward*, 783 S.W.2d at 923. The court concluded: "So defined, we understand the clause to require some *physical* harm to the person claiming a bodily injury." *Id.* In *Fildes*, the policy defined "bodily injury" as "bodily injury to a person or sickness, disease or death which results from it." *Fildes*, 873 S.W.2d at 886 (emphasis omitted). The court relied on *Ward's* interpretation of simi-

lar language "to require some *physical* harm to the person claiming a bodily injury." *Id.*

The Western District, on the other hand, has found the definition of "bodily injury" as "bodily injury, sickness or disease sustained by a person including death resulting from any of these at any time" in a hotel owner's insurance policy to be ambiguous. *Lanigan*, 938 S.W.2d at 332. In *Lanigan*, the plaintiff's sister had died in a hotel and plaintiff had obtained a judgment against the hotel owners for interfering with the right of sepulcher. The plaintiff sought coverage. The court held it was uncertain whether "sickness" and "disease" were modified by "bodily" in the definition. It held that "sickness" and "disease" could include mental injury, citing *Lavanant v. General Acc. Ins. Co. of Am.*, 79 N.Y.2d 623, 584 N.Y.S.2d 744, 747, 595 N.E.2d 819, 822 (1992).

In *Lavanant*, "bodily injury" was defined in a landlord's comprehensive general liability policy as "bodily injury, sickness or disease." The court found the term "bodily injury" as used in the policy to be ambiguous. *Id.* at 747, 595 N.E.2d at 822. The court held that the words "sickness" and "disease" not only enlarge the term "bodily injury" but also, to the average reader, may include mental as well as physical sickness and disease. *Id.* The court added:

> Recognition of the compensability of purely mental injuries for claimants brings with it increased exposure to liability for insureds. This underscores that the reasonable expectation of property owners purchasing a comprehensive policy ... would be that their liability for purely mental injury would fall within their insurance coverage.

*Id.* at 748, 595 N.E.2d at 823.

*Lanigan* and *Lavanant* are in the minority. Only a few other courts have found that "bodily injury" so defined encompasses emotional distress. *See Lees v. Smith*, 363 So.2d 974, 980 (La.App. 3rd Cir.1978); *Loewenthal v. Sec. Ins. Co. of Hartford*, 50 Md.App. 112, 436 A.2d 493 (1981); *Morrison Assur. Co. v. North American Reinsurance Corp.*, 588 F.Supp. 1324, 1327 (N.D.Ala.1984), *aff'd* 760 F.2d 279 (11th Cir.1985). *See also Allstate Ins. Co. v. Biggerstaff*, 703 F.Supp. 23, 25

(D.S.C.1989) (construing only "bodily injury").

New Jersey finds the term "bodily injury" is ambiguous only when the emotional injuries have physical manifestations. *SL Industries, Inc. v. American Motorists Ins. Co.*, 128 N.J. 188, 607 A.2d 1266, 1273–75 (1992). Likewise, Minnesota has held that "bodily injury may cover appreciable manifestations" of emotional distress. *Garvis v. Employers Mutual Casualty Company*, 497 N.W.2d 254, 257 (Minn.1993).

However, the overwhelming majority of jurisdictions which have considered the issue hold that "bodily injury" standing alone or defined in a policy as "bodily injury [or harm], sickness or disease" is unambiguous and encompasses only physical harm. *Transamerica Ins. Co. v. Doe*, 173 Ariz. 112, 840 P.2d 288, 291 (App. Div. 1 1992); *Chatton v. National Union Fire Ins.*, 10 Cal.App.4th 846, 13 Cal.Rptr.2d 318, 322 (1st Dist.1992); *Aim Ins. Co. v. Culcasi*, 229 Cal.App.3d 209, 280 Cal.Rptr. 766, 775 (6 Dist.1991); *National Cas. Co. v. Great Southwest Fire Ins.*, 833 P.2d 741, 746 (Colo.1992); *Washington v. State Farm Fire & Cas. Co.*, 629 A.2d 24, 26–27 (D.C.App.1993); *Cotton States Mutual Ins. Co. v. Crosby*, 244 Ga. 456, 260 S.E.2d 860 (1979); *Presidential Hotel v. Canal Ins. Co.*, 188 Ga.App. 609, 373 S.E.2d 671, 672 (1988); *University of Illinois v. Continental Cas.*, 234 Ill.App.3d 340, 175 Ill.Dec. 324, 339, 599 N.E.2d 1338, 1353 (4th Dist.1992); *Dahlke v. State Farm Mut. Auto. Ins. Co.*, 451 N.W.2d 813, 815 (Iowa 1990); *Allstate Ins. Co. v. Diamant*, 401 Mass. 654, 518 N.E.2d 1154, 1156 (1988); *Farm Bureau Mutual Insurance Company of Michigan v. Hoag*, 136 Mich.App. 326, 356 N.W.2d 630, 632–33 (1984); *Hamlin v. Western Nat. Mut. Ins. Co.*, 461 N.W.2d 395, 397 (Minn.App. 1990); *Artcraft v. Lumberman's Mut. Cas. Co.*, 126 N.H. 844, 497 A.2d 1195, 1196 (1985); *David v. Nationwide Mutual Insurance Company*, 106 Ohio App.3d 298, 665 N.E.2d 1171, 1173 (1995); *E–Z Loader Boat Trailers v. Travelers Indemn.*, 106 Wash.2d 901, 726 P.2d 439, 443 (1986); *Northwest Farm Bureau Ins. v. Roberts*, 52 Wash.App. 888, 765 P.2d 328, 330 (Wash.App.1988). *See also* the following federal district court cases: *United*

*States Fidelity & Guaranty Co. v. Shrigley,* 26 F.Supp. 625 (W.D.Ark.1939); *Lapeka, Inc. v. Security Nat. Ins. Co., Inc.,* 814 F.Supp. 1540, 1548–49 (D.Kan.1993); *Mutual Serv. Cas. Ins. v. Co–op Supply, Inc.,* 699 F.Supp. 1438, 1440 (D.Mont.1988); *United Pacific Ins. Co. v. First Interstate Bancsystems,* 690 F.Supp. 917, 918 (D.Mont.1988); *Aetna Cas. & Sur. Co. v. First Sec. Bank of Bozeman,* 662 F.Supp. 1126, 1128 (D.Mont.1987); *Rolette County v. Western Cas. & Sur. Co.,* 452 F.Supp. 125, 130 (D.N.D.1978); *Mellow v. Medical Malpractice Ass'n,* 567 A.2d 367, 368 (R.I.1989); *St. Paul Fire & Marine Ins. v. Campbell Cty. School,* 612 F.Supp. 285, 287 (D.Wyo.1985); *West American Ins. Co. v. Bank of Isle of Wight,* 673 F.Supp. 760 (E.D.Va.1987).

Of these cases *Diamant,* 518 N.E.2d 1154, *Northwest Farm Bureau,* 765 P.2d 328, and *Mellow,* 567 A.2d 367 involve homeowners policies. *Northwest Farm Bureau* specifically held that "bodily injury" defined as "physical harm, sickness or disease" in a homeowner's liability policy did not cover claims for negligent infliction of emotional distress.

In interpreting "bodily injury, sickness or disease," some of these jurisdictions have specifically held that "bodily" modifies "sickness" and "disease." *See, E–Z Loader Boat Trailers, Inc.,* 726 P.2d at 443; *Chatton,* 13 Cal.Rptr.2d at 324. Still others find irrelevant which words "bodily" modifies because neither sickness nor disease arguably includes emotional distress. *David,* 665 N.E.2d at 1173. *See also Cotton States,* 260 S.E.2d at 860. *Aim Ins. Co.,* 280 Cal.Rptr. at 775–76 distinguishes in detail *Lavanant, Morrison Assur.,* and *Loewenthal* which hold to the contrary.

Courts may look to dictionary definitions to determine the common meaning of terms. In dictionary definitions, "bodily" is equated with "physical" or "corporeal" as contrasted with "mental" or "spiritual." Webster defines "bodily" as "having a body or a material form: physical, corporeal. . . . Bodily contrasts with *mental* or *spiritual.*" WEBSTER'S NEW INTERNATIONAL DICTIONARY 245 (3d ed.1976). THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 232 (2d ed.1987) de-

fines "bodily" as "1. of or pertaining to, the body. 2. corporeal or material, as contrasted with spiritual or mental."

Similarly, BLACK'S LAW DICTIONARY 175 (6th ed.1990) defines "bodily" as "Pertaining to or concerning the body; of or belonging to the body or the physical constitution; not mental but corporeal." It defines "bodily injury" as: "Generally refers only to injury to the body, or to sickness or disease contracted by the injured as a result of injury." It defines "body" as: "The main part of the human body; the trunk. The term however has also been held to embrace all members of the person, including the head and limbs."

Further, in insurance law "bodily injury" is considered to be a narrower concept than "personal injury" which covers mental or emotional injury.

It is well settled in insurance law that "bodily injury" and "personal injury" are not synonyms and that these phrases have two distinct definitions. See 7A J. Appleman, Insurance Law and Practice Section 4501.14 (Berdal ed.1979). The term "personal injury" is broader and includes not only physical injury but also any affront or insult to the reputation or sensibilities of a person. "Bodily injury," by comparison, is a narrow term and encompasses only physical injuries to the body and the consequences thereof.

*Diamant,* 518 N.E.2d at 1156. *See also Chatton,* 13 Cal.Rptr.2d at 323; *Presidential Hotel,* 373 S.E.2d at 672; *Transamerica,* 840 P.2d at 291; *Artcraft,* 497 A.2d at 1196; *McCroskey v. Cass County,* 303 N.W.2d 330, 336 (N.D.1981); and *Rolette,* 452 F.Supp. at 130 and cases cited therein.

The Citizens homeowners policy itself draws a distinction between "bodily injury" and "personal injury." The "Homeowner's-Plus" endorsement amends the definition of "bodily injury" as found in the policy, to "personal injury" and provides coverage for injuries resulting from specific non-physical acts such as libel, defamation, and false arrest.[3] If "personal injury," which includes emotional injury, was included in the term

---

**3.** JNL is not making a claim under the "personal     injury" coverage.

"bodily injury," this endorsement would be superfluous.

We conclude that the common meaning of the phrase "bodily harm, sickness or disease" as used to define "bodily injury" is not ambiguous and that it refers to physical conditions of the body and excludes mental suffering or emotional distress. We find that the context of the policy supports this conclusion. We adopt the majority view, which is consistent with our position in *Fildes* and *Ward*.

For all the above reasons, we affirm the trial court's entry of summary judgment.

PUDLOWSKI, J. and GERALD M. SMITH, Senior Judge, concur.