**AMERICAN FAMILY MUTUAL INSURANCE, Respondent,**

v.

**Pamela COKE and Ward Farrell, Appellants.**

**No. ED 98871.**

Missouri Court of Appeals, Eastern District, Division Four.

Nov. 12, 2013.

Michael J. Fagras, St. Peters, MO, for appellants.

Robert J. Wulff, Mary Anne Lindsey, St. Louis, MO, for respondent.

GARY M. GAERTNER, JR., Judge.

### Introduction

Pamela Coke and Ward Ferrell (Appellants) appeal from the trial court's entry of judgment upon the jury's verdict in favor of American Family Mutual Insurance Company (AmFam) and against Appellants. Appellants assert on appeal that the trial court erred in granting AmFam's motion in limine to strike the testimony of Appellants' expert witness, in allowing the submission of jury instruction No. 7, and in denying Appellants' motion for judgment notwithstanding the verdict (JNOV). We affirm.

### Background and Procedure

Appellants purchased a Monaco Beaver Contessa Motor Home (RV) in February of 2008. In November of that same year, the RV was involved in an accident where the unoccupied RV rolled down an embankment and into a ravine, causing a total loss. Appellants filed a Proof of Loss Claim form for the total loss, but AmFam did not pay the claim.

AmFam filed a Petition for Declaratory Judgment–Insurance Policy, requesting the trial court find there was no coverage for the damage to the RV because Appellants voided their policy by concealing and/or misrepresenting material facts and circumstances concerning the damage to the RV with the intent to defraud AmFam. Appellants filed a counterclaim al-

leging Breach of Contract and Vexatious Refusal to Pay.[1] AmFam asserted Appellants' counterclaims were barred, because Appellants had materially breached the insurance contract by making material misrepresentations regarding the cause of damage to their vehicle.

The claims went to trial in 2011 (2011 trial), and at the close of evidence the trial court granted AmFam's motion for directed verdict, finding in favor of AmFam and against Appellants. Appellants appealed to this Court, which reversed the judgment and remanded the cause for a new trial. *Am. Family Mut. Ins. Co. v. Coke*, 358 S.W.3d 576 (Mo.App.E.D.2012).

At the second trial (2012 trial) on AmFam's petition and Appellants' counterclaims, the following evidence was adduced, viewed in a light most favorable to the jury verdict. Appellants purchased their RV in February of 2008 for $178,000. Appellants made repairs and upgrades to the RV, including a new $1,100 fuel pump, a GPS system for $5,900, a $6,500 warranty, and new tires for $6,000. In August of 2008, Ward Ferrell contacted AmFam to inquire about raising the value of the RV policy from $178,000 to $210,000. Likewise, in September and again in October of 2008, Pamela Coke (Coke) contacted AmFam to inquire about raising the value of the RV policy from $178,000 to $195,000 and getting a guarantee for $195,000 in coverage. Coke stated another insurance company would give her a guaranteed value in writing, and she wanted the same from AmFam. AmFam responded that they do not offer stated-value policies but pay fair market value. AmFam raised the value of Appellants' policy to $195,000, but informed Appellants that in the event of a total loss, they would only receive fair market value for the RV.

As for Appellants' general finances, Appellants operated Rusty Enterprises LLC, a tool company, until 2011. Between 2004 and 2008, Appellants' tax statements showed that Rusty Enterprises had a net income of $2,518 in 2004, $433 in 2005, and $2,097 in 2006, and net losses of $6,935 in 2007 and $4,658 in 2008. In 2008 sales were down approximately 50%, due to the economic downturn and increased competition. Before 2011, Appellants had resided at 12610 Lusher Road in Florissant, Missouri in a home with a $120,000 mortgage. However, the state took part of their property to widen the road, after which the value of their home decreased to $67,000. After two years on the market, Appellants were unable to sell their home at 12610 Lusher Road and let it go into foreclosure.[2]

As for the incident itself, Coke testified that while in Arizona, she decided to drive the RV to an RV park in Canyon Lake Park, which was accessed via a winding mountainous road. As she was driving, the brakes felt like there might be something wrong and were making a hissing noise. She pulled into a level turnaround parking area to examine the brakes. She left the RV running because the air-conditioning was on. Before exiting the RV, she testified she put the transmission switch in neutral and "thought" she set the parking brake. The RV gearbox had three settings: drive, neutral, and reverse. If the gear was in drive or reverse, the RV doors would not open from the inside. She exited the RV and was walking towards the brakes when the RV began to

---

1. Appellants' counterclaim also included a claim for defamation, but that count was dismissed prior to trial and is not at issue on appeal.

2. Appellants argue on appeal that their foreclosure occurred several years after the 2008 incident with the RV; however, they did not make this distinction to the jury.

move forward, rolling down an embankment and into a ravine. She testified that the incident was an accident and she did not know how it happened.

David Sonne (Sonne) testified to the following. AmFam hired Sonne, the owner of Vehicle Mechanical and Accident Reconstruction, to investigate the accident and inspect the braking system on the RV. His field investigator, who was a master automobile technician, examined the RV and determined the brakes were functioning properly. Thus, Sonne determined that the parking brake must not have been engaged; otherwise, the RV would not have been able to roll into the ravine. The field investigator also determined that the transmission was functioning and that the transmission fluid was normal. Sonne checked for recalls of the transmission system, of which there were none. Sonne could not determine whether the RV had been in neutral when it rolled into the ravine. Sonne's report concluded there was no evidence that "a mechanical malfunction, mechanical defect, or improper service/repair work could have caused or contributed to the accident in this case."

On cross-examination, Sonne agreed that he had not physically inspected the RV himself and he did not know if his investigator had visually inspected the RV's brake hoses and tubes. Sonne admitted that while he referred to the RV's owner manual, he had not read the manual for the transmission system published by Allison (the manufacturer of the RV's transmission), which warned that if the RV motor was left running it could move unexpectedly. He stated that although Allison published a general warning that a problem could exist with the transmission, that did not mean there was a problem here. Because they did not find evidence of a transmission problem, they did not investigate further.

AmFam read the deposition testimony of Jeff Juetten (Juetten) and Tim Dietz (Dietz) to the jury. Jeutten testified he was a traffic accident consultant and had been hired by Appellants to inspect the RV and the scene of the incident. He testified he found that the braking system had no apparent defects and that nothing had failed mechanically. Jeutten further testified the slope of the terrain where the RV had been stopped was insufficient for the RV to roll forward on its own. He concluded that to have rolled into the ravine, the RV must have been in drive without the parking brake on. Last, Dietz testified he was the tow truck driver who had towed the RV out of the ravine. He testified the parking brake was not engaged when his company arrived. He further stated the road on which Coke was driving was hazardous and difficult to drive, especially for large vehicles, such as RVs.

After the parties rested, the trial court denied both parties' motions for directed verdict and a jury entered a verdict in favor of AmFam and against Appellants. Appellants filed a motion for JNOV or a new trial, which the trial court denied. This appeal follows.

## Discussion

Appellants argue three points on appeal. They contend the trial court erred: (1) in excluding the testimony of their expert witness both regarding his opinion as to the cause of the RV driving into the ravine and as a rebuttal witness to impeach the sufficiency of Sonne's investigative report; (2) in allowing the submission of jury instruction No. 7; and (3) in denying Appellants' motion for JNOV, asserting AmFam failed to produce sufficient evidence to meet its burden to prove Appellants misrepresented or concealed material facts with the intent to defraud AmFam. For

clarity, we address Appellants' third point first.

## Point III

In their third point on appeal, Appellants argue the trial court erred in denying their motion for a directed verdict or JNOV, because AmFam failed to make a submissible case, in that it failed to present evidence, other than conjecture and speculation, that Appellants concealed or misrepresented any material facts with the intent to defraud AmFam. We disagree.

### 1. Standard of Review

■■■ We review the denial of a motion for JNOV under the same standard as the denial of a motion for directed verdict; i.e., we review to determine whether substantial evidence supports each and every fact essential to liability. *Sanders v. Ahmed*, 364 S.W.3d 195, 208 (Mo. banc 2012). We view the evidence in a light most favorable to the verdict reached by the jury, and we will reverse only when there is a complete absence of probative evidence supporting the jury's verdict. *Id.* We will reverse a jury's verdict for insufficient evidence only when there are no probative facts to support the jury's conclusion. *Merseal v. Farm Bureau Town & Country Ins. Co. of Mo.*, 396 S.W.3d 467, 470 (Mo.App.E.D. 2013).

### 2. Burden of Proof

■■■ In actions for declaratory judgment, the burden of proof "rests where it would have been placed had a different type of suit been brought." *Universal Reinsurance Corp. v. Greenleaf*, 824 S.W.2d 80, 83 (Mo.App.E.D.1992). In general, the burden to prove coverage under an insurance policy fails upon the party seeking to recover under the policy. *Citizens Ins. Co. of Am. v. Leiendecker*, 962 S.W.2d 446, 451 (Mo.App.E.D.1998). However, the insurance company bears the burden to prove that a policy exclusion is applicable or that the insured has forfeited the right to coverage by its failure to comply with the policy's conditions. *Nichols v. Preferred Risk Group*, 44 S.W.3d 886, 896–97 (Mo.App.S.D.2001); *Am. Family Mut. Ins. Co. v. Arnold Muffler, Inc.*, 21 S.W.3d 881, 883 (Mo.App.E.D.2000); *State Farm Fire & Cas. Co. v. Schroeder*, 951 S.W.2d 708, 709 (Mo.App.E.D.1997). Specifically, "[w]hen an insurer brings a declaratory judgment seeking to prevent coverage under the policy, the burden of establishing the exclusion of coverage rests with the insurer." *Am. Family Mut. Ins. Co.*, 21 S.W.3d at 883.

AmFam agreed Appellants' RV was insured under their insurance policy with AmFam and pursuant to that policy AmFam would pay for a loss of the insured RV due to a collision. The policy defined "loss" as the "direct and accidental loss of or damage to [the] insured car." Moreover, the policy contained a provision stating, "[t]his entire policy is void if, before or after a loss, any person claiming coverage of this policy has concealed or misrepresented any material fact or circumstance concerning this insurance with intent to defraud or deceive us." AmFam brought this action for declaratory judgment alleging the damage to the RV was not due to an accidental loss of or damage to the RV.

Applying the shifting-burden methodology, Appellants had the burden to prove their RV was a loss, i.e. a "direct and accidental loss of or damage to" the RV. *See Citizens Ins. Co. of Am.*, 962 S.W.2d at 451 (even when case was initiated by insurance company seeking declaratory judgment, burden of proving coverage under insurance policy falls upon party seeking to recovery under policy). If Appellants met this burden, AmFam then had the burden to prove the policy was void because Appellants "concealed or misrepre-

sented any material fact or circumstance concerning this insurance with intent to defraud or deceive us." *See Nichols*, 44 S.W.3d at 896–97; *Am. Family Mut. Ins. Co.*, 21 S.W.3d at 883; *State Farm Fire & Cas. Co.*, 951 S.W.2d at 709.

3. *Substantial Evidence Supports the Verdict*

■ It was Appellants' burden to show coverage under the terms of the insurance policy. *See Citizens Ins. Co. of Am.*, 962 S.W.2d at 451. AmFam agrees that on the date of the incident, there was an active insurance policy on the RV. Nevertheless, Appellants here failed to prove to the satisfaction of the jury that they suffered a loss covered under the policy, for which they had to prove their claimed loss was an accidental loss. The term accidental loss is generally defined by its dictionary meaning, as "an unintended and unforeseen injurious occurrence; something that does not occur in the usual course of events or that could not be reasonably anticipated." Black's Law Dictionary 15 (7th ed.1999); *see also Hughes v. Great Am. Ins.*, 427 S.W.2d 266, 271 (Mo.App. 1968). Appellants' testimony evidence at trial was not sufficient to convince the jury that the RV rolling into the ravine was an unintended and unforeseen occurrence.

The evidence, viewed in a light most favorable to the jury verdict, showed the RV's brakes were functioning properly and there were no mechanical problems. The parking area was level. Although Coke testified she placed the RV in neutral and thought she put the parking brake on, the parking brake was not on when the RV was towed out of the ravine. Both Sonne and Juetten testified that there was nothing wrong with the RV's brakes and the parking brake was disengaged. Further, Appellants' own investigator concluded the RV could not have rolled forward unless the RV's transmission was in drive. In

the absence of any other evidence explaining why the RV rolled into the ravine, the jury was justified in finding Appellants failed to prove the incident constituted an accidental loss.

While Coke testified that she had placed the RV in neutral before she opened the door to exit the vehicle and that a safety feature of the RV was that the doors would not open if the RV was in drive, the jury had the right to disbelieve her testimony. *See Keveney v. Mo. Military Acad.*, 304 S.W.3d 98, 105 (Mo. banc 2010) ("[t]he jury is the sole judge of the credibility of witnesses and the weight and value of their testimony and may believe or disbelieve any portion of that testimony" (citation omitted)). Looking at this record, Appellants failed to produce evidence, sufficient to persuade the jury, supporting each and every fact essential to prove coverage under the insurance policy, and it was not error for the trial court to decline to grant their motion for JNOV. *See Sanders*, 364 S.W.3d at 208.

■ Because Appellants failed to persuade the jury they suffered a "loss" as defined by the policy, it is unnecessary to reach the question of whether AmFam met its burden to prove that the Appellants' counterclaims were barred. *See Am. Family Mut. Ins. Co.*, 21 S.W.3d at 883 (burden to establish exclusion of coverage is on insurer). Nevertheless, we consider whether AmFam met its burden and conclude AmFam presented sufficient evidence to support its affirmative defense that the policy was void under the language of the contract, because Appellants concealed or misrepresented material facts with the intent to defraud AmFam. AmFam showed that in the months before the November crash, Appellants increased the amount of insurance on the RV and attempted to secure a guarantee for $195,000 in coverage in case of a total loss. The

jury was entitled to draw a negative inference from Appellants' multiple attempts to guarantee a stated price in the event of a total loss, immediately prior to the total loss.

Moreover, AmFam painted a picture of Appellants to the jury as a couple in financial difficulties. Between 2004 and 2008, their business, Rusty Enterprises, had not been profitable, garnering an annual net income of only a couple thousand dollars or, as in 2007 and 2008, a net loss. In 2008, business was down by 50%. We note that the jury would have been aware of the general economic climate that existed in November of 2008. In addition, after the State of Missouri took part of their property to widen the road, the value of their home substantially decreased and they were unable to sell it.

Against this backdrop, AmFam presented evidence from the inspector hired by Appellants that the RV could not have rolled into the ravine unless the RV was in drive with the parking brake off. Although Appellants asserted at trial that Coke had left the RV in neutral not drive and Appellants had invested money in the RV, including upgrades to the RV itself and building a special garage to house the RV, we defer to a jury's factual findings and credibility determinations. *Doe Run Res. Corp. v. Certain Underwriters at Lloyd's London,* 400 S.W.3d 463, 472 (Mo. App.E.D.2013).

Viewing this evidence in a light most favorable to the verdict, there is not a complete absence of probative evidence to support the jury's verdict, and thus the trial court did not err in denying Appellants' motion for JNOV. *Sanders,* 364 S.W.3d at 208. JNOV is only appropriate when the evidence and inferences therefrom are so strong that there is no room for reasonable minds to differ, which was not the situation here. *Wagner v. Bondex*

*Intern., Inc.,* 368 S.W.3d 340, 348 (Mo.App. W.D.2012).

Point denied.

### Point I

Turning now to Appellant's first point on appeal, Appellants argue the trial court erred in granting AmFam's motion in limine to strike the testimony of Appellants' expert witness, Billy Woodring, Jr. (Woodring), both in their case in chief and as a rebuttal witness. We disagree.

1. *Testimony of Billy Woodring, Jr.*

At the 2011 trial, Appellants called Billy Woodring, Jr. (Woodring) as an expert on the Allison transmission. Woodring testified to the following. For the past eight years, he had serviced the truck fleet for Salt River Electric (SR Electric), many of which had an Allison transmission. Woodring had not inspected the RV, but he had read the service manual and knew the RV's transmission was an Allison transmission that was very similar, but not identical to the transmission of two of the trucks he worked on at SR Electric. The RV and the SR Electric trucks had the same touchpad shift selector, except that the RV had three gears and the trucks had five. Both worked by sending an electric pulse to a selenoid when the gear was selected. On cross-examination, Woodring agreed he had never inspected the RV and had not been provided with copies of the reports of the incident, pictures of the RV, or depositions of parties and witnesses.

On five occasions, the two SR Electric trucks with a similar five-gear touchpad Allison transmission slipped from neutral gear into drive on their own. Although he investigated the transmission gearboxes, he was unable to discover why the problem occurred. Counsel for Appellants asked Woodring if he had formed an opinion as to why the RV had slipped into gear based

on his experience with the similar Allison transmission gearboxes, but the trial court sustained AmFam's objection for lack of foundation. Appellants did not assert in their first appeal to this Court that the trial court's exclusion of this evidence for lack of foundation was error.

Before the 2012 trial, AmFam filed a motion to strike Woodring as an expert witness, asserting that the trial court had previously barred Woodring from giving his opinion as to what caused the RV to engage in gear after finding he lacked foundation to give such an opinion. AmFam argued that since the prior trial, Woodring had done no additional investigation and had not examined the RV, and thus his opinion still lacked foundation and he should be barred from expressing opinion testimony as to causation. After hearing arguments from both sides at a pretrial hearing, the trial court found that Woodring lacked foundation to testify about the RV and that the prior court's decision regarding foundation was the law of the case.

At the start of trial, Appellants made an offer of proof through testimony from Woodring. Appellants again offered Woodring as an expert "qualified to give an expert opinion regarding electronics as they relate to a keypad selector switch in an Allison transmission." Woodring identified himself as a Department of Transportation Inspector and hydraulic technician doing vehicle repair and service for SR Electric. He offered the same testimony as at the 2011 trial regarding his experience with Allison transmissions. Further, he stated that he had conducted over 50 investigations[3] of accidents where air brakes were in question, and he had read Sonne's investigative report and did not believe it was sufficiently thorough.

The trial court sustained its earlier ruling to exclude Woodring as an expert witness. Appellants then attempted to call Woodring as a rebuttal witness to Sonne's testimony, but the court denied that request also.

### 2. Standard of Review

■ We generally review for an abuse of discretion the trial court's decision to admit or exclude expert testimony. *Johnson v. State*, 58 S.W.3d 496, 499 (Mo. banc 2001); *Delacroix v. Doncasters, Inc.*, 407 S.W.3d 13, 45 (Mo.App.E.D.2013). Likewise, we review the trial court's ruling regarding the admission or exclusion of rebuttal testimony for an abuse of discretion. *Moore v. Ford Motor Co.*, 332 S.W.3d 749, 768 (Mo. banc 2011).

### 3. Law of the Case

■ Appellants list two arguments in their first point relied on: that the trial court erred, first, in granting AmFam's motion to strike Woodring as an expert witness, and second, in not allowing Woodring to testify as a rebuttal witness. Regarding the grant of the motion to strike, Appellants limit their assertion of error to the argument that Woodring should have been allowed to testify at the second trial to causation specifically. However, the law of the case doctrine bars Woodring from testifying to his opinion as to the cause of the RV driving into the ravine.

■ "The doctrine of the law of the case provides that a previous holding in a case constitutes the law of the case and precludes relitigation of the issue on remand and subsequent appeal." *Walton v. City of Berkeley*, 223 S.W.3d 126, 128–29 (Mo. banc 2007) (citation omitted). "[T]he law of the case bars relitigation of issues

---

**3.** This number included his experience as instructor in electronics and automotive main-tenance in the United States Army between 1972 and 1992.

not only expressly raised and decided on appeal, but also those that could have been raised but were not." *Id.* at 129; *see also Williams v. Kimes,* 25 S.W.3d 150, 153–54 (Mo. banc 2000). Thus, the "failure to raise points in a prior appeal means that a court later hearing the case need not consider them," *Williams,* 25 S.W.3d at 154. While an appellate court has the discretion to refuse to apply the law of the case doctrine, *Walton,* 223 S.W.3d at 130, we do not apply that discretion here.

The question before this court is whether the issue of the admissibility of Woodring's causation testimony raised in the present appeal was decided in *American Family Mutual Insurance Co. v. Coke,* 358 S.W.3d 576 (Mo.App.E.D.2012), or could have been raised in that appeal. If the answer is in the affirmative, then the law of the case doctrine would generally bar Appellants from relitigating that issue. In the 2011 trial, the trial court ruled that Appellants had failed to establish a foundation for Woodring to testify to his opinion as to why the RV slipped into gear and drove into the ravine. Appellants did not appeal this ruling. Moreover, for the 2012 trial, Woodring did not conduct any additional investigation that would have established a foundation for his causation opinion testimony. Under the law of the case doctrine, the trial court's 2011 decision regarding the admissibility of Woodring's causation testimony is the law of the case, and any relitigation of that issue is barred.

While Appellate courts have discretion to consider an issue where there is a mistake, a manifest injustice, or an intervening change in law, none of those stated exceptions apply here. *See Williams,* 25 S.W.3d at 154. To the extent Appellants argue a mistake or manifest injustice occurred, we disagree. Appellants were on notice from the 2011 trial that there was no foundation for Woodring's opinion testimony on causation, yet Appellants took no further steps prior to the 2012 trial to establish a foundation: they did not have Woodring examine the RV or even photographs of the RV, or conduct further investigation. It was Appellants' responsibility to create the proper foundation, and we see no mistake or manifest injustice here. Thus, we decline to exercise our discretion to review the issue.

### 5. *Rebuttal Witness*

■■■■ Appellants next argue the trial court abused its discretion in not allowing Woodring to testify as a rebuttal witness against Sonne's expert testimony. "A party is entitled to introduce evidence to rebut that of his adversary, and for this purpose any competent evidence to explain, repel, counteract, or disprove the adversary's proof is admissible." *Aliff v. Cody,* 26 S.W.3d 309, 315 (Mo.App.W.D. 2000) (citation omitted). Rebuttal evidence is admissible if it tends to disprove points newly raised by the opposing party. *See Khoury v. ConAgra Foods, Inc.,* 368 S.W.3d 189, 197 (Mo.App.W.D.2012); *Stone v. City of Columbia,* 885 S.W.2d 744, 748 (Mo.App.W.D.1994). Even if the trial court did abuse its discretion in excluding evidence, we will only reverse where the error resulted in prejudice, in that the improperly excluded evidence would have changed the outcome of the trial. *Aliff,* 26 S.W.3d at 318, 321.

The central issue in the case was whether the RV drove off the ravine by accident or by Appellants' design, thus voiding the insurance policy. AmFam's expert, Sonne, testified that his office's investigation showed there was nothing wrong with the RV's brakes and that the transmission appeared fine upon a cursory inspection. On cross-examination, Appellants questioned the thoroughness of Sonne's office's investigation. Appellants pointed out that Sonne did not physically view the RV him-

self but relied on hearsay to write his report, and that Sonne did not know if his investigator had visually inspected the brake tubes and hoses. In addition to their cross-examination, Appellants sought to call Woodring as a rebuttal witness to impeach Sonne's investigation. In their offer of proof, Appellants questioned Woodring about Sonne's methodology in compiling his report, and Woodring stated his opinion that Sonne's report did not contain sufficient information about what tests Sonne's investigator performed on the RV's brakes and transmission.

We find here that, regardless of whether the trial court abused its discretion in excluding Woodring's rebuttal testimony, no prejudice resulted to Appellants because the exclusion would not have changed the outcome of the case. "By both statute and rule, an appellate court is not to reverse a judgment unless it believes [an] error committed by the trial court against the appellant materially affected the action. [Section] 512.160.2; Rule 84.13(b)." *Aliff*, 26 S.W.3d at 321 (citation omitted). Appellants hoped to impeach Sonne's report through Woodring's testimony that Sonne's report was not thorough; however, Appellants had already made this point through their questioning on cross-examination. The exclusion of Woodring's testimony did not create a substantial and glaring miscarriage of justice, because a challenge to the thoroughness of Sonne's report was already before the jury. *See State ex rel. Mo. Hwy. & Transp. Comm'n v. Buys*, 909 S.W.2d 735, 739 (Mo.App.W.D.1995) (no prejudice when excluded evidence had already been established through other evidence).

Moreover, Woodring's rebuttal testimony solely as to the sufficiency of Sonne's report would not have carried much critical weight, because Woodring's testimony would not have been based on his personal knowledge of the RV, the RV's three-gear transmission, or the circumstances of this incident. Further, Woodring had not examined the RV or the crash site, and he had not reviewed photographs of the RV or depositions of parties and witnesses.

While Woodring's rebuttal testimony could have been admitted solely for the limited purpose of attacking the sufficiency of Sonne's investigative report, we cannot say that the trial court abused its discretion in excluding that testimony. *See Aliff*, 26 S.W.3d at 315 (trial court has discretion to allow or exclude rebuttal witnesses). Here, Woodring did not establish in either the 2011 or 2012 trial his expertise in writing investigative reports. The 2011 trial was silent as to the issue. Woodring testified at the 2012 trial that he had investigated over 50 crashes during the course of his 40-year career; however, he did not testify how recent his experience was or what his procedure was for writing reports. He merely testified that he did not think Sonne's report was adequately thorough. Counsel for Appellants had already extensively addressed the thoroughness of Sonne's report on cross-examination. Accordingly, we find the trial court did not abuse its discretion in excluding Woodring's rebuttal testimony.

Point denied.

*Point II*

In their second point on appeal, Appellants argue the trial court erred in allowing jury instruction No. 7, because the instruction did not state, allude to, or otherwise list any material fact that Appellants allegedly concealed or misrepresented and there was no definition in the instruction defining material fact. We disagree.

We review *de novo* the question of whether the jury was properly instructed. *Fleshner v. Pepose Vision Inst., P.C.*, 304 S.W.3d 81, 90 (Mo. banc 2010).

To reverse a jury verdict for instructional error, the party challenging the instruction must show: (1) the instruction as submitted mislead, misdirected, or confused the jury; and (2) prejudice resulted from the instruction. *Id.* at 90–91. Although our review is *de novo*, we view the evidence in a light most favorable to the submission of the instruction. *Bradford v. BJC Corp. Health Servs.*, 200 S.W.3d 173, 178–79 (Mo. App.E.D.2006).

Rule 70.20 governs jury instructions. The rule provides that "[w]henever Missouri Approved Instructions [ (MAI) ] contains an instruction applicable in a particular case ... such instruction shall be given to the exclusion of any other instructions on the same subject." Rule 70.02(b). The rule further notes that if the MAI must be modified for the sake of fairness, such modification "shall be simple, brief, impartial, free from argument, and shall not submit to the jury or require findings of detailed evidentiary facts." *Id.*

AmFam submitted Instruction No. 7, which read: "Your verdict must be for plaintiff American Family if you believe: First, defendant Pamela Coke or defendant Ward Ferrell concealed or misrepresented material facts or circumstances concerning defendants insurance claim with the intent to defraud or deceive plaintiff American Family, and Second, plaintiff American Family was thereby prejudiced." Appellants objected, arguing the instruction should state what specific "material facts or circumstances" were misrepresented or concealed by Appellants, and the instruction should list a specific action of intentional misrepresentation or concealment. They argued there was no evidence, only speculation, to support the instruction. The court overruled the objection and submitted Instruction No. 7 as written.

Instruction No. 7 was based on the MAI 32.24, Affirmative Defenses–Insurance Policy Defense, which states: "Your verdict must be for defendant if you believe: First, plaintiff (*describe violated policy condition, e.g. 'failed to submit a proof of loss to defendants within the time prescribed by the policy'*), and Second defendant was thereby prejudiced." Under this instruction, AmFam should insert only the language of the policy provision it asserted was violated. The policy condition AmFam asserts was violated stated: "This entire policy is void if, before or after a loss, any person claiming any coverage of this policy has concealed or misrepresented any material fact or circumstance concerning this insurance with intent to defraud or deceive us."

Looking at the plain language of MAI 32.24 and the insurance policy, Instruction No. 7 complied with MAI 32.24. MAI 32.24 specifically requires the language of the policy provisions, not, as Appellants argue, detailed evidentiary facts supporting the alleged violation of that policy provision. Rather, Rule 70.02 expressly states that any modification to the MAI "shall not ... require findings of detailed evidentiary facts." Rule 70.02(b); *see also Powderly v. S. County Anesthesia Assoc.*, 245 S.W.3d 267, 277 (Mo.App.E.D.2008) (proper instruction submits only ultimate facts, not evidentiary details). The trial court did not err in submitting Instruction No. 7 to the jury.

Point denied.

*Conclusion*

The judgment of the trial court is affirmed.

LISA S. VAN AMBURG, P.J., and PATRICIA L. COHEN, J., concur.