**AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,**
Appellant,

v.

**ARNOLD MUFFLER, INC., Stacy
Zenk Fry, and Jason Travis
Noyes, Respondents.**

No. ED 76859.

Missouri Court of Appeals,
Eastern District,
Northern Division.

July 11, 2000.

Lawrence F. Hartstein, Hartstein, Sherman & Agniel, St. Louis, for appellant.

John M. McIlroy, Jr., McIlroy and Milan, Bowling Green, for respondent.

ROBERT E. CRIST, Senior Judge.

Appellant American Family Mutual Insurance Company (American Family) appeals the judgment of the trial court in its declaratory judgment action for a determination of coverage under an insurance policy. We affirm.

Stacy Zenk Fry (Fry) was an employee of Arnold Muffler, Inc. (AMI). AMI was in the business of selling car parts, mufflers, exhaust pipes, and tail pipes wholesale to various dealers throughout Missouri and Illinois. AMI had a main office in Barnhart and five satellite offices/warehouses in other locations. In October of 1996, Fry was employed by AMI as a driver to deliver parts. AMI furnished Fry a delivery van to make the deliveries. Her job duties required her to go to the warehouse in St. Peters, pull the order sheets, get the parts from the warehouse and then deliver them to the retailer. Usually, her supervisor Jim Lesh would assist her and then review the delivery route with her. She understood that she should take the most direct route to make the deliveries unless there was a problem with road construction. Fry understood that AMI's policy was that she should not deviate from the route unless she had permission. Fry testified that in the past she had talked with the dispatcher if she had to deviate from her route. The dispatcher was Jim Lesh.

Vice–President of AMI, Judy Hegar, testified that the written policy for the "hotshot" drivers was that "All deliveries are to be made quickly as possible. The driver's required to take the most direct route as possible to his location or locations. No scenic routes or side routes." In addition, "If a driver must deviate from the route for any reason he or she must notify the dispatcher for approval." She further stated the drivers had no designated route to take, but were encouraged to use paved streets and take the safest route.

On October 4, 1996, Fry's supervisor Jim Lesh was on vacation. As a result, no supervisor was on site and employees were expected to carry out their duties without any on-site supervision. Fry left the warehouse in St. Peters located at the intersection of Interstate 70 and Route 79 to make deliveries. She was driving a 1985 Chevrolet Van leased to AMI. She planned to deliver a part to a repair shop in Old Monroe, Missouri and then go to B & B Auto Parts located at the intersection of Route 47 and EE just west of Winfield, Missouri.

Fry completed her delivery in Old Monroe. The most direct route from Old Monroe to B & B Auto Parts was to travel north on Route 79 to Route 47, and then travel west on Route 47 to Route EE. Instead, Fry drove north on Route 79 to Route C and turned west on Route C and then went north on County Road 857, a gravel road. Fry's purpose in going this way was so she could pick up her child's homework at her babysitter's house. After picking up the homework, Fry continued north on County Road 857, then turned right on County Road 850. Her intention was to take 850 to County Road 861 until she again reached Route 47. However, Fry was involved in an automobile accident on 850 with Jason Travis Noyes. She was about a mile and a half from Route 79 when the accident occurred.

At the time of the accident, AMI was insured by a policy of insurance issued by American Family. The policy provides liability coverage for insured persons. It defines them as follows:

**Insured person** or **insured persons** means:

a. **You.**

b. Any person using **your insured car.**

. . .

But the following are not **insured persons:**

a. Any person using **your insured car** without **your** permission.

b. Any person using **your insured car** with **your** permission, but who exceeds the scope of that permission.

Noyes filed a cause of action for personal injuries against Fry and AMI. American Family filed this declaratory judgment to determine if it was obligated to defend Fry in the suit filed by Noyes. American Family contended that Fry was using the insured vehicle outside the scope of AMI's permission and thus, was not insured.

After a bench trial, the trial court found Fry did deviate from her planned route in violation of AMI's rules, but that she had returned to a route designed to reach B & B Auto Parts in Winfield when the accident occurred. Therefore, the court concluded Fry was covered by the insurance policy issued by American Family. American Family appeals.

In Points I and III, American Family contends the trial court erred in concluding American Family had failed to meet its burden of proving there is a valid exclusion from coverage. American Family contends it did meets its burden of proving the exclusion applied and the burden then "shifted" to Fry to prove there was coverage despite the exclusion.

■ This Court's reading of the trial court's judgment shows no misapplication of the burden of proof. When an insurer brings a declaratory judgment seeking to prevent coverage under the insurance policy, the burden of establishing the exclusion of coverage rests with the insurer. *State Farm Fire and Cas. Co. v. Schroeder,* 951 S.W.2d 708, 709 (Mo.App. E.D.1997). Here, the evidence showed AMI had a valid contract of insurance with American Family and further, AMI had given Fry permission to drive the van. The dispute surrounded whether Fry exceeded the scope of AMI's permission to her, and thus, was excluded from coverage. On that issue American Family bore the burden of proof. The trial court's judgment indicates it did apply these appropriate standards in reaching its judgment. Points I and III are denied.

■ In Point II, American Family argues the trial court erred in finding Fry was acting within the scope of her permission to operate AMI's van because she failed to prove she had permission to deviate from her original business route or that her deviation was minor in nature.

■ If a court determines that a particular use exceeds the scope of permission granted, the court must determine the effect of that conclusion. Missouri courts have applied a moderate legal theory in this determination, the "minor deviation" rule. *See, Speidel v. Kellum,* 340 S.W.2d 200, 202 (Mo.App.1960). Under this rule, "if the use made by an employee or other bailee is not such a gross, substantial, or major violation, even though it may have amounted to a deviation, protection is still afforded to the bailee under the omnibus clause." 6C John Alan Appleman & Jean Appleman, *Insurance Law and Practice* § 45:475 (1979); *See also, Speidel,* 340 S.W.2d at 202. In determining whether a violation is minor or material, the court must consider the extent of the deviation in actual distance or time and the purpose for which the vehicle was given. *Cameron Mut. Ins. Co. v. Chitwood,* 609 S.W.2d 492, 495 (Mo.App. S.D.1980). Such a determination is a matter of degree, with no hard or fast rules. *Id.* In addition, even if there is a deviation, if the employee has returned to his or her employer's business and to a point where in the performance of duties he or she is required to be, there may be coverage. *See, Manchester Ins. and Indem. Co. v. Ring,* 589 S.W.2d 350, 355 (Mo.App. W.D.1979).

Here, the evidence showed Fry had completed her personal errand. She had returned to her original business purpose and was heading toward Winfield to deliver the part. The entire event lasted only five minutes and only took her off the main highway briefly. She had not returned to the highway, but she had returned to her business purpose and was within the scope of AMI's permission to use the van. Although AMI discouraged the use of gravel roads, it did not prohibit it and Fry testified she had traveled on a gravel road before to deliver a part. In addition, AMI did not have a designated route Fry was required to take when delivering parts to the Winfield store. It only required that a direct route be taken. While Fry would discuss the route with her supervisor, she did not have a designated route. It further appears she could not have discussed any route with Lesh on that day because he was out of town. At the time of the accident, Fry had resumed AMI's business and was headed toward Winfield to deliver the part. Point denied.

The judgment is affirmed.

RICHARD B. TEITELMAN, P.J., and LAWRENCE E. MOONEY, J., concur.