FOR APPELLANT: Kirk R. Presley, 4801 Main Street, Suite 375, Kansas City, Missouri 64116, Bret A. Sumner, 7777 Bonhomme, Suite 2100, Clayton, Missouri 63105.
FOR RESPONDENT: Martin J. Buckley, Daniel J. Sullivan, Graham J. Spence, 800 Market Street, Suite 2900, St. Louis, Missouri 63101.
James M. Dowd, Chief Judge *327 This wrongful death lawsuit arises out of a drunken-driving incident in which Curtis Huenefeld, the intoxicated driver of a Ford F-150, struck and killed a pedestrian, Lisa Higgenbotham ("Decedent"), in the early morning hours of October 24, 2013 at North Walker Street near State Highway B in Montgomery City, Missouri. Christy Higgenbotham, Decedent's daughter, sued Huenefeld's employer, Pit Stop Bar and Grill, LLC ("Pit Stop"), asserting claims of respondeat superior liability and the negligent retention of Huenefeld in Pit Stop's employ. On Pit Stop's motion, the trial court entered summary judgment against Higgenbotham on both claims. Higgenbotham claims the trial court erred because there are genuine issues of material fact in the record that (1) Huenefeld was acting within the course and scope of his employment when he struck and killed Decedent because he was transporting Pit Stop's money for deposit at a bank, and (2) that Pit Stop negligently retained Huenefeld in its employ because it knew or should have known of Huenefeld's history and dangerous proclivity of driving while intoxicated but nevertheless put him in charge of enforcing Pit Stop's alcohol consumption policy, including supervising his own drinking, and provided him with free alcohol at work as a benefit of his employment. We agree and reverse and remand for trial on both claims.
Factual and Procedural Background
The following facts are not disputed: Curtis Huenefeld married Lisa Huenefeld, the owner of Pit Stop, on June 12, 2007.[1] From 2009 to 2014, Curtis Huenefeld worked for Pit Stop as a manager and cook. The evening of October 23, 2013, Huenefeld consumed several alcoholic beverages while on duty at Pit Stop, some before and some after closing the kitchen for the night, around 9:00 p.m. Huenefeld remained at Pit Stop that night until after the bar closed and left around 1:30 a.m. on October 24, 2013. When Huenefeld drove away from Pit Stop in his Ford F-150 pickup truck, he was intoxicated. Only blocks away from Pit Stop, he struck Decedent with his vehicle, killing her. Huenefeld was carrying $2,004 in cash at the time of the collision. His weekly salary from Pit Stop was only around $280, and in the past Pit Stop had-at the end of some nights of business-required that someone take the proceeds to deposit in Pit Stop's local bank account.
Immediately following the collision, Huenefeld was interviewed by an investigating police officer, Brandon Prosser. Later that day, Huenefeld was charged as a persistent offender with the class D felony of driving while intoxicated. On February 4, 2014, this charge was amended upward to the class C felony of first-degree involuntary *328 manslaughter. And on March 5, 2014, Huenefeld pleaded guilty to this offense. He is currently an inmate of the Missouri Department of Collections.
Turning to this case, on November 27, 2013, Christy Higgenbotham filed against Pit Stop a civil action for the wrongful death of her mother. On May 26, 2017, the trial court granted summary judgment in favor of Pit Stop. The summary judgment record before the trial court included deposition testimony from both Curtis and Lisa Huenefeld, an affidavit from Officer Prosser, and an affidavit from one of Huenefeld's coworkers at Pit Stop, Sandy Gilbert. This appeal follows.
Standard of Review
We review de novo whether the trial court properly granted summary judgment. Rice v. Hodapp , 919 S.W.2d 240, 243 (Mo. banc 1996). We view the record in the light most favorable to the party against whom judgment was entered, according that party all reasonable inferences drawn from the record. ITT Commercial Fin. Corp. v. Mid-America Marine Supply Corp. , 854 S.W.2d 371, 376 (Mo. banc 1993). Evidence in the record presenting a genuine issue of material fact defeats a movant's right to summary judgment. Id. at 382. A genuine issue is a real and substantial one-not merely conjecture, theory, or possibility. Id. at 378. The dispute must not be merely argumentative, frivolous, or imaginary. Id. at 382. Finally, where the trial court does not set forth its reasoning in its order granting summary judgment, we presume the court based its decision on the grounds specified in the movant's motion for summary judgment. Rapp v. Eagle Plumbing, Inc. , 440 S.W.3d 519, 522 (Mo. App. E.D. 2014).
Point I: Respondeat Superior
To decide Point I, we must determine whether on this record there is a genuine issue of material fact that Curtis Huenefeld, when he struck and killed Decedent, was transporting Pit Stop's money for deposit at a bank and was therefore acting within the course and scope of his employment. We believe there is.
Under the doctrine of respondeat superior, an employer is liable for the misconduct of an employee where that employee committed such misconduct within the course and scope of his employment, Dibrill v. Normandy Assocs., Inc. , 383 S.W.3d 77, 89 (Mo. App. E.D. 2012) (citing State ex rel. Green v. Neill , 127 S.W.3d 677, 678-79 (Mo. banc 2004) ). An act is within the course and scope of employment if (1) even though not specifically authorized, it is done to further the business or the interests of the employer under her general authority and direction and (2) it naturally arises from the performance of the employer's work. Id. at 90 (citing Daugherty v. Allee's Sports Bar & Grill , 260 S.W.3d 869, 872-73 (Mo. App. W.D. 2008) ; see also Cluck v. Union Pac. R.R. Co. , 367 S.W.3d 25, 29 (Mo. banc 2012) ).
Whether an act was committed within the scope and course of employment is measured not by the time or motive of the conduct, but by whether it was done by virtue of the employment and in furtherance of the business or interest of the employer. Cluck , 367 S.W.3d at 29, So long as the act is fairly and naturally incident to the employer's business, although mistakenly or ill-advisedly done, and did not arise wholly from some external, independent or personal motive, it is done while engaged in the employer's business. Dibrill , 383 S.W.3d at 90 (citing P.S. v. Psychiatric Coverage Ltd. , 887 S.W.2d 622, 624 (Mo. App. E.D. 1994) ).
An employer generally is not liable for injuries caused by an employee's *329 operation of a motor vehicle while traveling to or from work.[2] Tran v. Dave's Elec. Co. Inc. , 361 S.W.3d 417, 419 (Mo. App. W.D. 2011). But Missouri courts have recognized several exceptions to this rule. Tuttle v. Muenks , 964 S.W.2d 514, 518 (Mo. App. W.D. 1998). One such exception is the dual purpose doctrine, which provides that if the employee's work requires travel, the employee is deemed to be in the course of his employment although he may have been attending to a simultaneous personal purpose. Id. For the dual purpose doctrine to apply, the travel must have been necessary even in the absence of a personal purpose. Id.
The dual purpose doctrine does not require that the particular employee had to take the business trip, just that someone had to make the trip to carry out the business mission. Id. at 519. If the trip ultimately had to be made, and if the employer got the necessary item of travel accomplished by combining it with the employee's personal trip, it was a concurrent cause of the trip. Id. The business and personal motives are not weighed and it does not matter which was the dominant motive. Id. Nor does it preclude application of the dual purpose doctrine that the employee's trip included going home before completing the employer's business. Downs v. Durbin Corp. , 416 S.W.2d 242 (Mo. App. 1967) (finding dual purpose where employee loaded lumber from work site into personal vehicle to take home and then deliver to employer's premises the next morning, but got in an automobile accident on the way home), Corp v. Joplin Cement Co. , 337 S.W.2d 252 (Mo. banc 1960) (finding dual purpose where employee traveled to company plant to pick up his paycheck and building materials to take to the employer's work site the next day, but died in an automobile accident on the way home from the plant after cashing his paycheck and stopping to drink at a bar).[3]
Here, we find the record raises a genuine issue of material fact regarding whether Huenefeld had a work purpose-i.e., was acting within the course and scope of his employment-when he drove away from Pit Stop on the evening of October 23, 2013 and struck Decedent with his truck. Officer Brandon Prosser's affidavit and Huenefeld's booking report for the night in question indicate he was carrying $2,004 in cash at the time of the accident. Officer Prosser stated in his affidavit that when he spoke with Huenefeld at the scene of the accident, Huenefeld said the money was from Pit Stop and he was taking it to the bank. Sandy Gilbert, a fellow Pit Stop employee at the time of the accident, stated in her affidavit that she was familiar with the pattern and practices of Huenefeld and Pit Stop, and that at the end of the day, Huenefeld would take the money from the cash register to deposit at a bank. This evidence is enough on its own *330 to inject a genuine issue of material fact into this case as to Higgenbotham's claim of respondeat superior liability-a reasonable juror presented with this evidence could find Huenefeld was carrying out a necessary mission for Pit Stop, delivering proceeds to the bank, and thus was acting within the scope and course of his employment when he struck Decedent.
Pit Stop argues this evidence does not raise a genuine issue of material fact because, according to Pit Stop, the material statements from Officer Prosser's and Sandy Gilbert's affidavits would not have been admissible at trial. We disagree. Pit Stop asserts Sandy Gilbert's statements were not based on personal knowledge and therefore lacked foundation, but that is not true-in her affidavit, Gilbert noted her five years of experience working at Pit Stop and her familiarity with its and Huenefeld's pattern of work and practices. Pit Stop notes she did not say she was present at the bar on the night of October 23, 2013, but she did not testify about what happened that night, just about Pit Stop's and Huenefeld's standard operating procedure and ordinary conduct.
Turning to Officer Prosser's affidavit, Pit Stop contends the statement Officer Prosser averred Huenefeld made-that Huenefeld was taking the $2,004 from Pit Stop to the bank-was inadmissible hearsay, but we find it likely to be a prior inconsistent statement admissible to impeach Huenefeld on cross-examination, or even to serve as substantive evidence in the case. A party can impeach his or her own witness in a civil case with a prior inconsistent statement. Lindsay v. Mazzio's Corp. , 136 S.W.3d 915, 922 (Mo. App. S.D. 2004) (citing Rowe v. Farmers Ins. Co., Inc. , 699 S.W.2d 423, 425 (Mo. banc 1985) ). So if Higgenbotham called Huenefeld as a witness at trial, she could lay a foundation for impeachment by adducing his prior inconsistent statement, reminding Huenefeld of the precise circumstances under which it was made, and asking him whether he made the statement. This would give Huenefeld the opportunity to refresh his recollection of the statement and to admit, deny, or explain it. If Huenefeld admitted making the statement, he would stand impeached by his own testimony.
If instead Huenefeld denied or could not recall making the statement, extrinsic evidence in the form of his prior inconsistent statement would be admissible to impeach him, since such a statement of a witness who is available for cross-examination may be used as substantive evidence in a civil trial. Rowe , 699 S.W.2d at 428. Either way, Huenefeld's statement would be admissible as substantive evidence to meet Higgenbotham's burden of proving an element necessary to make a submissive case.
We also reject Pit Stop's argument that Higgenbotham insufficiently pleaded her claim of respondeat superior liability because she did not specifically cite the dual purpose doctrine or allege Huenefeld undertook a dual purpose mission. The dual purpose doctrine is not a theory of recovery distinct from a respondeat superior theory, but is simply a method of proving such a theory by showing that the injury-causing employee was acting within the course and scope of his employment. See Tuttle , 964 S.W.2d at 518-19 (setting forth no additional pleading requirement for the dual purpose doctrine to apply to a properly-pleaded claim of respondeat superior liability, but instead stating simply that "[f]or the dual purpose doctrine to apply, the travel must have been necessary even where a personal purpose is lacking"). Consequently, it would be unduly formal to require Higgenbotham to have explicitly referenced the "dual purpose doctrine" in her petition, and absurd *331 to insist that substance was missing from her allegations because she did not, in addition to alleging Huenefeld's driving mission had a work purpose, claim that it also had a personal purpose. To be sure, Missouri Supreme Court Rule 55.05 does not insist on such needless formalism: "A pleading that sets forth a claim for relief, ... shall contain (1) a short and plain statement of the facts showing that the pleader is entitled to relief and (2) a demand for judgment for the relief to which the pleader claims to be entitled."
Point I is granted.
Point II: Negligent Employment Retention
To decide Point II, we must determine whether on this record there is a genuine issue of material fact that Pit Stop knew or should have known of Huenefeld's history and dangerous proclivity of driving while intoxicated and that, by retaining Huenefeld and providing him with free alcohol as a benefit of his employment, Pit Stop negligently contributed to the death of Decedent. We believe there is.
Negligence is "conduct which falls below the standard established by law for the protection of others against unreasonable risk of harm." Gibson v. Brewer , 952 S.W.2d 239, 246 (Mo. banc 1997) (citing Restatement (Second) of Torts sec. 282 (1965) ). An employer may be directly liable for negligent hiring or negligent retention of an employee where the employer knew or should have known of the employee's dangerous proclivities and the employer's negligence was the proximate cause of the plaintiff's injury. Gaines v. Monsanto , 655 S.W.2d 568, 570 (Mo. App. E.D. 1983). Negligent hiring or retention liability is thus independent of respondeat superior liability for negligent acts of an employee acting within the scope of his employment. Id.
In bringing a claim for negligent retention, a plaintiff must show that an employee's misconduct not only caused injury but was consistent with a dangerous proclivity of the employee that has been exhibited by prior misconduct. Reed v. Kelly , 37 S.W.3d 274, 277 (Mo. App. E.D. 2000). A claim of negligent retention requires evidence that would cause the employer to foresee that the employee would create an unreasonable risk of harm outside the scope of his employment. Dibrill , 383 S.W.3d at 87 (citing Reed , 37 S.W.3d at 278 ) (emphasis added). Whether negligence exists depends on whether a reasonably prudent person would have anticipated danger and provided against it. Reed , 37 S.W.3d at 277. The negligence of the defendant need not be the sole cause of the injury. Gaines , 655 S.W.2d at 572.
Further, specifically regarding proximate cause, a plaintiff must show the negligence charged was the efficient cause that set in motion the chain of events leading up to the injury. Id. at 571. The defendant's negligence was the proximate cause of the injury if, after its occurrence, it appears to be the reasonable and probable consequence of the defendant's act or omission. Id. at 571-72. It does not matter whether a reasonable person could have foreseen the particular injury. Id. at 572.
On this record, we find there is a genuine issue of material fact as to whether Pit Stop knew or should have known of Huenefeld's history and dangerous proclivity of driving while intoxicated and whether, by retaining Huenefeld and providing him with free alcohol as a benefit of his employment, Pit Stop negligently contributed to the death of Decedent. Higgenbotham produced certified copies of court docket sheets and an order of probation showing that in a 2006 case, Huenefeld pleaded guilty as a prior offender to the class A misdemeanor of driving while intoxicated *332 in violation of § 577.010. Huenefeld's ex-wife, Lisa Huenefeld, the owner of Pit Stop, testified in a deposition that she had tried to police Huenefeld's drinking in the past, but that she had stopped being able to do so once she gave birth to their daughter and quit working at the bar at night. Lisa Huenefeld further testified that although Pit Stop had a company policy that an employee may not consume alcohol while working, Curtis Huenefeld, as manager, was placed in charge of enforcing the policy even though that required him to monitor himself. Huenefeld himself testified in a deposition that helping himself to alcoholic drinks from Pit Stop was a fringe benefit of his work there, that he frequently took advantage of this benefit, and that he did so on the night of October 23, 2013.
From this evidence, although reasonable jurors may have reached differing conclusions, one might have found that Pit Stop knew or should have known that Huenefeld had a dangerous proclivity to drive while intoxicated. And a reasonable juror might have found that Pit Stop's acts and omissions related to Huenefeld's drunk driving placed others at unreasonable risk of foreseeable harm and were the proximate cause of Decedent's death.
Regardless of whether Pit Stop actually knew of Huenefeld's history of driving while intoxicated, the aforementioned evidence would support a finding that Pit Stop should have known of his dangerous proclivity. A reasonable juror might have concluded that a simple background check would have made clear that Huenefeld had a history of driving while intoxicated. Such a juror might further have reasoned that Huenefeld's history made him a danger to others if allowed to manage a bar, to supervise his own drinking, and to help himself to drinks. Although one might justifiably note that it would have been awkward for Lisa Huenefeld to, as the owner of Pit Stop, run a background check on her husband at the time, a juror might reasonably have found that Pit Stop-as an employer putting Curtis Huenefeld in charge of a bar holding a Missouri liquor license-had a duty to investigate his background to determine whether he might pose special risks to the public if placed in a position of such responsibility. Lisa Huenefeld described her ex-husband as one whose drinking she had tried to "police." Accordingly, a reasonable juror might have found that Pit Stop should have known Curtis Huenefeld had a dangerous proclivity to drive while intoxicated.
Indeed, such a finding would be supported by this Court's holding in Gaines , where although the employer had no established business practice to determine dangerous proclivities of prospective or current employees, 655 S.W.2d at 570, this Court found sufficient to survive a motion to dismiss a petition asserting that the employer should have learned of its employee's dangerous proclivity, based not only on the employee's alleged past misconduct but also on the particular position into which the employer put him: one in which it may have become substantially more likely that he might-or, at least, easier for him to-cause others harm. See id. at 571-72 (noting that plaintiffs, in addition to asserting that the employer knew or should have known of its employee's dangerous proclivities, had also contended that the employer put the dangerous employee-whom plaintiffs alleged had previously been convicted of rape and robbery-in a position requiring him to circulate among female employees, and that allowed him to learn a particular female employee's home address).
Because the record also contains at least some evidence tending to show that though Huenefeld had a history of driving while *333 intoxicated, Pit Stop hired him, made him manager, put him in charge of enforcing its alcohol consumption policy, and allowed him to help himself to alcoholic drinks as a fringe benefit, a reasonable juror might further have concluded that Pit Stop acted negligently in retaining Huenefeld and proximately caused Decedent's death. In other words, a juror might reasonably have found it to be foreseeable from Pit Stop's acts and omissions that Huenefeld would drive away from work intoxicated and strike a pedestrian. This would meet the definition of negligence under Missouri law articulated in Gibson , cited above, and would satisfy the elements of a claim of negligent retention as set forth in Gaines .
Pit Stop contends proximate cause cannot be demonstrated because there is no evidence in the record tending to show that Pit Stop was responsible for putting Huenefeld in contact with Decedent, or that Huenefeld in the course of his employment drove while intoxicated. But these contentions miss the point. It simply does not matter for purposes of this claim whether Pit Stop put Huenefeld in contact with Decedent, and-as stated above, citing Dibrill -a claim of negligent retention distinctly addresses whether the employer's negligence contributes to creating a risk of harm outside the scope of the subject employee's work.
Nor is this, as Pit Stop contends, a "social host" case. While mere social hosts, as furnishers of alcohol, are not held liable for injuries inflicted by intoxicated persons, see, e.g., McClure v. McIntosh , 770 S.W.2d 406, 408 (Mo. App. E.D. 1989) (citing the dram shop law, § 537.053, in support of the principle that when an employer, in providing alcohol, acts as "at most" no more than a social host, no liability attaches), the claim here is that Pit Stop proximately caused Decedent's death not just by providing Huenefeld with alcohol but, going markedly further, by negligently retaining him as the manager of a bar -in which position he was put in charge of enforcing Pit Stop's alcohol consumption policy and supervising not only others' but also his own drinking-even though Pit Stop had knowledge, whether actual or constructive, that he had a dangerous proclivity to drive while intoxicated.
Pit Stop also raises concerns about the admissibility of evidence essential to support Higgenbotham's claim of negligent retention. Pit Stop argues that there is no support in the record for concluding that on November 28, 2006, Huenefeld pleaded guilty to driving while intoxicated. Pit Stop claims that the documents cited to support that assertion were insufficient for purposes of Rule 74.04 to establish that factual assertion. But Pit Stop does not dispute that these documents were properly authenticated by certification, meeting the requirements of § 490.130 (providing that "[c]opies from the record of proceedings of any court of this state, attested by the clerk thereof, with the seal of the court annexed ... shall be received as evidence of the acts or proceedings of such court in any court of this state"). Moreover, the docket sheets clearly indicate that on November 28, 2006, Huenefeld pleaded guilty to driving while intoxicated. Pit Stop observes that Higgenbotham did not provide the court's judgment in the 2006 case, but Pit Stop fails to cite any authority holding that only a judgment of conviction may support a finding that, prior to the October 23, 2013 incident, Huenefeld already had at least one conviction for driving while intoxicated, about which Pit Stop knew or should have known.
Point II is granted.
Conclusion
For the reasons stated above, we reverse the judgment of the trial court and *334 remand for trial on Higgenbotham's claims of respondeat superior liability and negligent retention.
Lawrence E. Mooney, J., and Stanley J. Wallach, Sp. J., concur.

Lisa Huenefeld and Curtis Huenefeld separated in November 2013 and divorced on August 27, 2015.

For doctrinal reasons, the employee's purposes in making an everyday commute are deemed to be exclusively personal, even if that is not literally accurate. As the Western District's opinion in Tran v. Dave's Elec. Co. Inc. , 361 S.W.3d 417, 419-20 (Mo. App. W.D. 2011) explains, the rationale for the "going and coming" rule appears to be that in an everyday commute, the employee fulfills his or her own personal purposes of preserving employment and earning compensation by being available for work, and the nature, extent, and risks of the employee's commute are dictated by his or her personal decisions where to reside and how and when to travel, and are unrelated to any particular feature of the work they perform at the employer's direction.

Cases addressing the dual purpose doctrine in the context of the Workers' Compensation Act are "instructive in understanding the concept of dual purpose." Tuttle , 964 S.W.2d at 518 n. 1.