# United States Court of Appeals
### For the Eighth Circuit

_____

No. 20-2590
_____

Tom Magee, Personal Representative of the Estate of James Owens,

*Plaintiff,*

v.

United States of America,

*Defendant - Appellee,*

Benjamin Harris,

*Defendant - Appellant.*

_____

No. 20-2592

_____

Tom Magee, Personal Representative of the Estate of James Owens,

*Plaintiff - Appellant,*

v.

United States of America,

*Defendant - Appellee,*

Benjamin Harris,

*Defendant.*

_____

Appeals from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: April 15, 2021
Filed: August 13, 2021

_____

Before SMITH, Chief Judge, COLLOTON and ERICKSON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Benjamin Harris injured James Owens while Harris was driving a vehicle owned by the United States Postal Service. Owens sued the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680, and he sued Harris for negligence under Missouri law. The district court[1] dismissed Owens's federal claim for lack of subject matter jurisdiction. The court reasoned that Harris was not acting within the scope of his employment with the Postal Service at the time of the accident. The court then declined to exercise supplemental jurisdiction over Owens's state-law claim against Harris. We affirm the judgment.

I.

In June 2016, Benjamin Harris was employed by the United States Postal Service as a mail carrier in Festus, Missouri. Mail carriers are assigned a route with a prescribed order of delivery. According to a Postal Service policy handbook, carriers are required to follow "their authorized lines of travel at all times." Authorized lines of travel include the carrier's route and travel to and from the route,

_____

[1]The Honorable Noelle C. Collins, United States Magistrate Judge for the Eastern District of Missouri, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

authorized lunch locations, and break locations. Carriers are directed not to "loiter or stop to converse unnecessarily" on their routes, and they are not permitted to deviate from their routes "for meals or other purposes unless authorized by" a manager, or "if local policies concerning handling out of sequence mail permit minor deviations."

Mail carriers are permitted two ten-minute personal breaks per day, but those breaks must be taken separately from each other and separately from the carrier's lunch break. Carriers designate two locations for taking personal breaks, and these locations are recorded on the carriers' route information forms. One of Harris's designated break locations was James Owens's address. Carriers are also permitted to take "reasonable comfort stops" to use the restroom or get a drink.

On June 1, 2016, Harris delivered mail to Owens's residence at approximately 8:51 a.m. After completing a delivery at a different address on his route at 12:50 p.m., Harris drove to a K-Mart approximately half a mile away. Once there, he purchased dog food to bring to Owens. Harris testified that he and Owens were friends, that he stopped for smoke breaks at Owens's residence during the work day, and that he would sometimes run errands for Owens during breaks. Harris never advised his supervisor that he ran errands for Owens during his break time.

At 1:00 p.m., Harris left K-Mart and drove to a nearby gas station, where he purchased a beverage. Harris then drove to Owens's residence, arriving at 1:09 p.m. He delivered the dog food and took a break with Owens. At approximately 1:15 p.m., Harris got back into his Postal Service vehicle to return to his delivery route. But Harris mistakenly shifted the vehicle into drive mode rather than reverse gear, and drove forward into Owens, knocking him through the exterior wall of the residence. Approximately twenty-five minutes elapsed between the time Harris left his route and the time of the accident.

Harris's supervisor conducted an investigation into the accident. As a result of the investigation, the Postal Service provided Harris with a notice of proposed removal from employment. The notice cited Harris's failure to operate his vehicle in a safe manner and his deviation from his assigned mail route without authorization. Harris filed a grievance and reached a settlement under which he was suspended from work for fourteen days but not terminated.

Owens then sued the United States in the district court under the Federal Tort Claims Act. The Act grants jurisdiction over civil actions against the United States for injury caused by the negligent act of any employee of the government "while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). Owens also sued Harris for common-law negligence under Missouri law. Harris responded by moving the district court to certify that he was acting within the scope of his employment and to dismiss him from the case on the ground that the proper defendant was the United States. *See* 28 U.S.C. § 2679(d)(3). The government opposed certification and moved to dismiss Owens's claim against the United States for lack of subject matter jurisdiction.

The district court concluded that Harris was not acting within the scope of his employment at the time of the accident, and that the United States was therefore entitled to sovereign immunity. The court denied Harris's petition to certify scope of employment and dismissed Owens's claim against the United States for lack of subject matter jurisdiction. The court declined to exercise supplemental jurisdiction over Owens's remaining state-law claim against Harris and dismissed that claim without prejudice. *See* 28 U.S.C. § 1367(c)(3). Harris and Owens each appealed, and their cases were consolidated for argument and decision. Owens is now deceased, and Tom Magee was substituted for Owens as personal representative of Owens's estate. *See* Fed. R. App. P. 43(a)(1).

We review *de novo* a district court's decision to dismiss a complaint for lack of subject matter jurisdiction. *Green Acres Enters., Inc. v. United States*, 418 F.3d 852, 856 (8th Cir. 2005). When the district court makes findings of fact on disputed issues, we review those findings for clear error. *Ryan v. United States*, 534 F.3d 828, 831 (8th Cir. 2008) (per curiam). The burden of proving the existence of subject matter jurisdiction rests with the party invoking federal jurisdiction. *Moss v. United States*, 895 F.3d 1091, 1097 (8th Cir. 2018).

"A threshold requirement to establish jurisdiction under the [Federal Tort Claims Act] is that the federal employee must have been acting within the scope of his employment when the tort was committed." *Johnson v. United States*, 534 F.3d 958, 963 (8th Cir. 2008). That question is governed by the law of the State where the alleged tort was committed. *Id.*

Under Missouri law, the analysis focuses on whether the act was done "by virtue of the employment and in furtherance of the business or interest of the employer." *Cluck v. Union Pac. R.R. Co.*, 367 S.W.3d 25, 29 (Mo. 2012) (internal quotation omitted). An act is done while engaged in the employer's business if it is "fairly and naturally incident to the employer's business" and "did not arise wholly from some external, independent or personal motive." *Higgenbotham v. Pit Stop Bar & Grill, LLC*, 548 S.W.3d 323, 328 (Mo. Ct. App. 2018). Where an employee commits a tort while driving a vehicle owned by his employer, Missouri law affords a presumption that the employee was acting within the scope of his employment. *Ewing-Cage v. Quality Prods., Inc.*, 18 S.W.3d 147, 150 (Mo. Ct. App. 2000). The presumption "disappears only when the defendant introduces substantial controverting evidence." *Id.*

In our view, the district court correctly concluded that the government rebutted the presumption, and the appellants failed to establish that Harris was acting within the scope of his employment. Postal Service mail carriers have carefully regimented routes. Postal Service policy requires carriers to follow "their authorized lines of travel at all times," and to refrain from unauthorized deviations. Harris deviated from his route without authorization for twenty-five minutes to run a personal errand for a friend. Delivering dog food to Owens was not an act done "by virtue of" Harris's employment or in furtherance of the Postal Service's "business or interest." *See Cluck*, 367 S.W.3d at 29 (internal quotation omitted). Harris's actions arose from a personal motive and were not "fairly and naturally incident to" the business of the Postal Service. *See Higgenbotham*, 548 S.W.3d at 328. Under applicable Missouri law, Harris was not acting within the scope of his employment at the time of the accident.

The appellants maintain that Harris never deviated from his route because he did not violate any policies of the Postal Service. Harris testified that he was entitled to take his personal break wherever he liked and to do whatever he wanted to do during the break. Although there is no written policy on this specific matter, Postal Service policy directs carriers to "[o]bey the instructions of your manager." Harris's supervisor testified that carriers are told not to deviate from their route to take a personal break at a location where they have already delivered mail.

The Postal Service's written policies support a finding that Harris's deviation was unauthorized. Without authorization from a supervisor, carriers are forbidden to backtrack to deliver mail out of order. Harris acknowledged that he would seek permission any time he needed to deliver mail out of sequence. Policies requiring carriers to follow "their authorized lines of travel at all times" and forbidding unauthorized deviations for "meals or other purposes" establish that carriers are not permitted to use their Postal Service vehicles for personal purposes. The district court did not clearly err in finding that Harris violated the Postal Service's policies

when he left his route for twenty-five minutes to purchase dog food for a friend, deliver the dog food at a location where he had already delivered mail, and take a break with his friend.

Harris next contends that even if he did deviate from his route, the deviation was a minor one that did not remove him from the scope of his employment. A deviation of a "marked and decided" character removes an employee from the scope of employment, but a "slight or incidental" deviation may not. *Brown v. Moore*, 248 S.W.2d 553, 557 (Mo. 1952) (internal quotation omitted). Harris left his delivery route to run a personal errand for a friend, in violation of his employer's policies. The deviation included stops at three locations, spanned twenty-five minutes, and ended in an accident as Harris prepared to return to his route to continue delivering mail. Harris's deviation was not slight or incidental, but rather was "definite and certain, out and back to the starting point." *Id.* at 558. Harris was not acting within the scope of his employment during the deviation.

Harris argues that *American Family Mutual Insurance Co. v. Arnold Muffler, Inc.*, 21 S.W.3d 881 (Mo. Ct. App. 2000), calls for a contrary conclusion. There, the court held that a delivery driver was acting within the scope of her permission to use her employer's vehicle at the time of an accident despite deviating from the most direct delivery route. *Id.* at 882, 884. The driver's deviation to perform a personal errand, however, "lasted only five minutes," and she had completed the errand and "returned to her original business purpose" by the time of the accident. *Id.* at 884. The driver also "did not have a designated route." *Id.* By contrast, Harris was required to follow a designated route and was prohibited from deviating from it without authorization. His detour spanned twenty-five minutes, and the accident occurred at Owens's residence before Harris began traveling back to his route. Determining whether a deviation is "minor or material" is "a matter of degree, with no hard or fast rules." *Id.* at 883. Harris's actions differ materially from those of the

employee in *American Family*, and his actions removed him from the scope of his employment.

Harris next argues that even if his actions constituted more than a minor deviation, he had returned to the scope of his employment by "the precise time of the accident." He likens his case to *Schulte v. Grand Union Tea & Coffee Co.*, 43 S.W.2d 832 (Mo. Ct. App. 1931). *Schulte* concerned a traveling salesman who deviated from his employment to visit a home for "a purpose of his own," and then collided with a street car when returning his company vehicle to the employer's garage. *Id.* at 833. Returning the vehicle to the garage was an "act of service for his employer," regardless of where the salesman ended his work day, so the accident "arose out of and in the course of the employment." *Id.* at 835. Generally speaking, however, an employee does not return to the scope of employment after a material deviation until he returns to the point of deviation or to a place where he should be located in the performance of his duties. *Humphrey v. Hogan*, 104 S.W.2d 767, 769 (Mo. Ct. App. 1937); *see Brown*, 248 S.W.2d at 557. Harris departed from his route at 204 Briar Ridge, and his next delivery was to be at 208 Briar Ridge, but he was still in the parking lot of Owens's residence on Maple Street when the accident occurred. He had not returned to the scope of employment.

Magee maintains that whether Harris left the scope of his employment is a question that must be decided by a jury. But the scope-of-employment question in cases brought under the Federal Tort Claims Act is a "threshold" jurisdictional question. *Johnson*, 534 F.3d at 963. Jurisdictional questions, "whether they involve questions of law or of fact, are for the court to decide" at the outset, unless the jurisdictional issue is so bound up with the merits that a full trial on the merits is needed to resolve the question. *Osborn v. United States*, 918 F.2d 724, 729-30 (8th Cir. 1990). This is not such a case. Whether Harris's conduct was within the scope of his employment is unrelated to the merits question of whether his conduct was negligent.

-8-

\* \* \*

For these reasons, the judgment of the district court is affirmed.

_____