# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-1703

_____

Jane Doe

*Plaintiff - Appellant*

v.

United States of America

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 22, 2022
Filed: January 24, 2023

_____

Before SMITH, Chief Judge, KELLY and GRASZ, Circuit Judges.

_____

SMITH, Chief Judge.

_____

Jane Doe sued the government after being sexually assaulted by an employee of the United States Department of Veterans Affairs (VA). The government moved to dismiss for lack of subject matter jurisdiction. The district court[1] granted the government's motion. Doe appeals the district court's determination that the assault occurred outside the scope of the employee's employment. We affirm.

I. *Background*
A. *Factual History*

Doe was being treated for a hip injury at the St. Louis VA Medical Center. She was referred to the battlefield acupuncture (BFA) therapy group. BFA is a form of therapy that involves placing needles or tacks into five spaces in a patient's ear.

The incident in question occurred during a private BFA session. William B. Luchtefeld, a nurse practitioner employed by the VA, was treating Doe. Luchtefeld performed the BFA therapy and then asked Doe if she wanted the hip pain "massaged out." *Doe v. United States*, No. 4:21-CV-00173-AGF, 2022 WL 898788, at *1 (E.D. Mo. Mar. 28, 2022). Luchtefeld instructed Doe to lay on her side. He began massaging Doe's lower back, hip, and stomach. He then instructed Doe to remove her pants to expose her injured hip area. Luchtefeld moved his hands between Doe's legs and groped and digitally penetrated her vagina. Luchtefeld also placed his hands under Doe's shirt and groped her breast. Luchtefeld documented the BFA therapy, not the massage and subsequent sexual assault.

After the incident, Doe went to the front desk with tears in her eyes. She asked another VA employee to see Luchtefeld's supervisor and a VA staff psychiatrist. A doctor purporting to be Luchtefeld's supervisor arrived, but Luchtefeld interrupted the conversation. Luchtefeld offered Doe his business card and prevented her from fully reporting the assault.

---

[1]The Honorable Audrey G. Fleissig, United States District Judge for the Eastern District of Missouri.

In a statement given to a special agent of the VA Office of Inspector General, Luchtefeld admitted to touching Doe's vagina because he "got kind of excited." R. Doc. 34-5, at. 4. He admitted that it was inappropriate for him to massage a patient. Doe also gave a statement, in which she stated Luchtefeld was not wearing gloves and was breathing hard. She noted that he had an erection.

## B. *Procedural History*

Doe filed a complaint, pursuant to the Federal Tort Claims Act (FTCA), asserting multiple negligent and intentional tort causes of action. The government moved to dismiss for lack of subject matter jurisdiction. It argued that Luchtefeld's job responsibility during his appointment was limited to treating Doe with BFA. It asserts that Luchtefeld was neither acting within the scope of his employment nor furnishing medical care or treatment when he ceased performing BFA and began to massage and sexually assault Doe. Based on Luchtefeld's unauthorized conduct, the government argued that Doe failed to establish jurisdiction under the FTCA.

After Doe responded to the government's dismissal motion, the parties jointly moved for limited discovery on the issue of subject matter jurisdiction and for additional time to allow Doe to supplement her response. The district court granted the joint motion.[2]

Doe's supplemental response argued that Luchtefeld had broad authority and duties, such that he was acting within the scope of his employment when he assaulted Doe. She further argued that her allegations that Luchtefeld committed intentional torts while furnishing medical care or treatment suffice to establish jurisdiction. Doe

---

[2]In addition to four affidavits from VA employees filed with its motion to dismiss, R. Docs. 10-1–10-4, the government filed statements given by Doe and some of her medical records. R. Docs. 13-1–13-4. It also submitted the bylaws of the medical staff for the St. Louis VA Medical Center. R. Doc. 39-2. Doe also provided medical records, as well as depositions from VA employees and a statement given by Luchtefeld. R. Docs. 34-4–34-11.

maintained that Luchtefeld was furnishing medical care or treatment when he assaulted her. She asserted that to hold otherwise would nullify the FTCA because negligence and intentional torts are never authorized by an employer.

The district court granted the government's motion. It concluded that jurisdiction under the FTCA requires a showing that the tortfeasor acted within the scope of employment as defined by state law. The district court further concluded that under Missouri law, sexual misconduct is generally never within the scope of employment because it only serves the interests of the tortfeasor, not the employer. The district court found that Luchtefeld's treatment authority was limited to BFA therapy and that any massage that he performed was not authorized nor intended to treat her hip pain. The district court concluded that Luchtefeld's actions were motivated wholly by his personal desires, such that he was not acting within the scope of his employment under Missouri law. The court's rulings eliminated the FTCA's sovereign immunity waiver with respect to Doe's claim.

II. *Discussion*

Doe brings three arguments on appeal challenging the district court's order. First, she argues that the district court relied on an interpretation of 38 U.S.C. § 7316 that nullified both the letter and intent of the statute. Second, she argues that the district court misinterpreted applicable Missouri law on the liability of an employer for the intentional torts of its employees. Third, she argues that the district court erred in (1) concluding the VA limited Luchtefeld's duties to BFA and (2) in determining that he was not acting within the scope of his employment.

A. *Standard of Review*

"We review *de novo* a district court's decision to dismiss a complaint for lack of subject matter jurisdiction." *Magee v. United States*, 9 F.4th 675, 680 (8th Cir. 2021). "The burden of proving the existence of subject matter jurisdiction rests with the party invoking federal jurisdiction." *Id.*

We review the district court's interpretation of both federal statutes and state law de novo. *Dowd v. United Steelworkers of Am., Loc. No. 286*, 253 F.3d 1093, 1099 (8th Cir. 2001) (federal statutes); *Dupps v. Travelers Ins. Co.*, 80 F.3d 312, 313 (8th Cir. 1996) (state law). "When the district court makes findings of fact on disputed issues, we review those findings for clear error." *Magee*, 9 F.4th at 680.

### B. *Interpretation of 38 U.S.C. § 7316*

Doe's first argument implicates various provisions of the FTCA and § 7316. "Generally, sovereign immunity prevents the United States from being sued without its consent." *Iverson v. United States*, 973 F.3d 843, 846 (8th Cir. 2020) (cleaned up). "When it passed the FTCA, Congress removed the sovereign immunity of the United States from suits in tort." *Id.* (cleaned up). The FTCA waives immunity with respect to

> civil actions on claims against the United States, for . . . personal injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

Section 7316(a)(1) applies this waiver to claims against employees of the VA Veterans Health Administration. It makes § 1346(b)(1) the exclusive remedy "for damages for personal injury, including death, allegedly arising from malpractice or negligence of a health care employee of the Administration in furnishing health care or treatment while in the exercise of that employee's duties in or for the Administration." 38 U.S.C. § 7316(a)(1). "'[H]ealth care employee of the Administration' means a physician, dentist, podiatrist, chiropractor, optometrist, nurse, physician assistant, expanded-function dental auxiliary, pharmacist, or

paramedical (such as medical and dental technicians, nursing assistants, and therapists), or other supporting personnel." *Id*. § 7316(a)(2).

However, intentional torts are excepted from the § 1346(b)(1) waiver. Section 2680(h) of the FTCA states that, "[t]he provisions of . . . section 1346(b) of this title shall not apply to . . . any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h).

Conversely, § 7316(f) provides an exception to § 2680(h):

> The exception provided in section 2680(h) of title 28 shall not apply to any claim arising out of a negligent or wrongful act or omission of any person described in subsection (a) in furnishing medical care or treatment (including medical care or treatment furnished in the course of a clinical study or investigation) while in the exercise of such person's duties in or for the Administration.

38 U.S.C. § 7316(f). "[S]ubsection (a)" refers to § 7316(a), stated above.

Doe contends that the district court erred in its analysis of § 7316(f). She asserts that it placed too much focus on the language, "while in the exercise of such person's duties in or for the Administration," but ignored the language, "wrongful act or omission of any person described in subsection (a) in furnishing medical care or treatment." She argues that the latter gives the statute practical meaning. Doe maintains that "the express words of the statute and their plain meaning indicates that, if an intentional tort is committed by a VA employee who is supposed to be delivering medical care as part of their duties, and is delivering medical care, then federal jurisdiction under the FTCA is mandated." Appellant's Br. at 16. The district court's analysis, according to Doe, nullifies the statute because wrongful acts will never be defined in a person's job duties. The government replies that Doe's interpretation is inconsistent with the FTCA's general design that only waives

-6-

sovereign immunity for acts committed by a government employee, "while acting within the scope of his office or employment." Appellee's Br. at 39 (quoting *Magee*, 9 F.4th at 679–80).

Doe's argument misinterprets the effect of § 7316(f). As the district court correctly concluded: "[Section 7316(f)] merely extends FTCA liability to intentional torts committed by VA health care employees; it does not eliminate the jurisdictional inquiry under the FTCA. . . . [F]ederal courts determining their jurisdiction under [§ 7316] still look to the FTCA's scope-of-employment test and corresponding state law." *Doe*, 2022 WL 898788, at *4.

Section 7316(f), in pertinent part states, "[t]he exception provided in section 2680(h) of title 28 shall not apply to any claim." 38 U.S.C. § 7316(f). This language excepts certain claims from § 2680(h). Such claims are identified by the remaining language of § 7316(f). Thus, certain intentional torts that arise from medical care or treatment provided by "VA health care employees" in the exercise of their duties are not subject to § 2680(h)'s jurisdictional bar. *See Ingram v. Faruque*, 728 F.3d 1239, 1249 (10th Cir. 2013) ("Section 7316(f) . . . insulates the individual government employee by nullifying § 2680(h) and thereby expanding the injured party's remedy against the government under the FTCA." (cleaned up)).

However, § 7316(f) does not grant jurisdiction to claims. Jurisdiction for claims against "a health care employee of the Administration" is exclusively granted by § 1346(b)(1), via § 7316(a)(1). *See* 38 U.S.C. § 7316(a)(1) ("The remedy . . . against the United States provided by section[] 1346(b) . . . for damages . . . arising from malpractice or negligence of a health care employee of the Administration . . . *shall be exclusive of any other civil action or proceeding*." (emphasis added)). In other words, § 7316 extends the FTCA remedy against the United States to claims "arising from the provision of medical services by health care employees of the VA." *Ingram*, 728 F.3d at 1245; *see also Brown v. Mercadante*, 687 F. App'x 220, 223 (3d Cir. 2017) (unpublished per curiam) (holding a veteran's intentional tort and

negligence claims against individual VA healthcare employees were barred because her exclusive remedy was an FTCA claim against the government).

We have long recognized that the "threshold requirement to establish jurisdiction under the Federal Tort Claims Act is that the federal employee must have been acting within the scope of his employment when the tort was committed" as "governed by the law of the State where the alleged tort was committed." *Magee*, 9 F.4th at 680 (cleaned up); *see also Johnson v. United States*, 534 F.3d 958, 963 (8th Cir. 2008) (same); *Primeaux v. United States*, 181 F.3d 876, 878 (8th Cir. 1999) (en banc) ("In determining the extent of the government's FTCA liability, scope of employment sets the line." (cleaned up)).

Requiring the federal employee to have acted within the scope of his employment does not "nullify" the statute. The FTCA makes clear that the scope-of-employment test is defined by state law, not the employer. *Magee*, 9 F.4th at 680 (stating that scope of employment "is governed by the law of the State where the alleged tort was committed"). Indeed, Doe relies heavily on *Leininger v. United States*, 499 F. Supp. 3d 973, 988–91 (D. Kan. 2020), where a physician assistant *was* determined to have been acting within the scope of his employment, as defined by Kansas law, when he sexually assaulted several patients. Similarly, the Supreme Court held that a provision "functionally indistinguishable" from § 7316(f) abrogates § 2160(h) and permitted a lawsuit "against the United States alleging medical battery by a Navy doctor acting within the scope of his employment." *Levin v. United States*, 568 U.S. 503, 518 (2013).

Accordingly, the district court's analysis was not in error.

### C. *Interpretation of Missouri Law*

Second, Doe argues that the district court erroneously held that "because sexual molestation is at issue, . . . the matter cannot entail employer responsibility either in negligence or intentional tort." Appellant's Br. at 43. She further argues that the

district court ignored several principles of Missouri law that require a more fact intensive analysis. Doe notes that Missouri courts have held that employer liability can be found "although the act was unauthorized, if the act was not unexpectable in view of the duties of the servant." *Id.* at 35 (quoting *Henderson v. Laclede Radio, Inc.*, 506 S.W.2d 434, 436 (Mo. 1974)).

The district court began its analysis with this court's conclusion in *Magee*, which provides:

> Under Missouri law, the analysis focuses on whether the act was done "by virtue of the employment and in furtherance of the business or interest of the employer." *Cluck v. Union Pac. R.R. Co.*, 367 S.W.3d 25, 29 (Mo. 2012) (internal quotation omitted). An act is done while engaged in the employer's business if it is "fairly and naturally incident to the employer's business" and "did not arise wholly from some external, independent or personal motive." *Higgenbotham v. Pit Stop Bar & Grill, LLC*, 548 S.W.3d 323, 328 (Mo. Ct. App. 2018).

*Magee*, 9 F.4th at 680.

The district court then acknowledged *Wellman v. Pacer Oil Co.*, 504 S.W.2d 55 (Mo. 1973) (en banc), which relied on the Restatement (Second) of Agency, §§ 231 and 235 (1958), to hold:

> The fact that the servant intends a crime, especially if the crime is of some magnitude, is considered in determining whether or not the act is within the employment, since the master is not responsible for acts which are clearly inappropriate to or unforeseeable in the accomplishment of the authorized result. The master can reasonably anticipate that servants may commit minor crimes in the prosecution of the business, but serious crimes are not only unexpectable but in general are in nature different from what servants in a lawful occupation are expected to do.
>
> . . .

> [In the case of outrageous acts,] the facts may indicate that the servant is merely using the opportunity afforded by the circumstances to do the harm.

*Wellman*, 504 S.W.2d at 58 (internal quotation marks omitted).

In addition, the district court noted three Missouri cases holding that sexual misconduct was outside the scope of employment,

> even where, as here, the employee took advantage of his job position to commit the misconduct and the misconduct took place during work hours and at the workplace. . . . [because] such sexual acts generally arise wholly from the employee's personal motive rather than to serve the employer in any part.

*Doe*, 2022 WL 898788, at *4 (citing *Gibson v. Brewer*, 952 S.W.2d 239, 246 (Mo. 1997) (en banc) ("[I]ntentional sexual misconduct and intentional infliction of emotional distress are not within the scope of employment of a priest, and are in fact forbidden."); *P.S. v. Psychiatric Coverage, Ltd.*, 887 S.W.2d 622, 625 (Mo. Ct. App. 1994) ("Regardless of whether sexual misconduct takes place during or in connection with therapy, it is not the general kind of activity a therapist is employed to perform. The sexual encounters between plaintiff . . . and [the therapist] resulted from purely private and personal desires."); *Gilley v. Mo. Pub. Entity Risk Mgmt. Fund*, 437 S.W.3d 315, 319 (Mo. Ct. App. 2014) ("It is absurd to think that [the tortfeasor]'s rape of [plaintiff] was undertaken in furtherance of the interests of Cole County. Clearly, the act arose from [the tortfeasor]'s personal motive.")).

On this precedential foundation, the district court determined that Luchtefeld was not acting within the scope of his employment under Missouri law. The district court concluded that "all evidence and inferences here point to Luchtefeld's purely personal desire." *Doe*, 2022 WL 898788, at *5. Doe's cited authorities do not defeat the district court's analysis. For instance, Doe relies on *Noah v. Ziehl*, which involved

-10-

a bar patron who was violently assaulted by a bouncer employed by the bar. 759 S.W.2d 905 (Mo. Ct. App. 1988). The patron sued the bar, and, after a jury trial, the jury returned a verdict in the patron's favor. *Id.* at 909. The Missouri Court of Appeals reversed. *Id.* at 913. The court found that the bouncer was not acting within the scope of his employment. *Id.* It concluded "that when conduct of an employee exceeds the scope and course of employment and are done, not in furtherance of the employer's business, but to gratify the employee's feelings or resentment or revenge, the conduct is outside the scope and course of the employment." *Id.* at 911. This is essentially the same holding in *Magee*, adopted by Missouri courts, which requires an act to be "'fairly and naturally incident to the employer's business,' and . . . 'not arise wholly from some external, independent or personal motive.'" *Magee*, 9 F.4th at 680 (quoting *Higgenbotham*, 548 S.W.3d at 328).

Doe also relies on a factor-based test in *Noah* for determining whether a particular use of physical force is within the scope of employment. But six years later, as cited by the district court, the Missouri Court of Appeals treated sexual misconduct by a therapist differently. In *P.S.*, the court examined "whether [a sexual relationship between a therapist and his patient] was done by virtue of the employment and in furtherance of the business or interest of the employer." 887 S.W.2d at 624. Determining the therapist was not acting within the scope of his employment, the court found that "[r]egardless of whether sexual misconduct takes place during or in connection with therapy, it is not the general kind of activity a therapist is employed to perform," and that "[t]he sexual encounters between plaintiff . . . and [the therapist] resulted from purely private and personal desires." *Id.* at 625. The *P.S.* court also found that "[t]he acts did not occur as part of any therapy program and they were not intended to further employer's business," *id.*, and that the "[p]laintiff . . . testified that she did not believe this behavior was part of therapy," *id.* at 624.

The findings in *P.S.* resemble this case. *See Doe*, 2022 WL 898788, at *5 ("Luchtefeld's treatment authority in this case was limited to BFA therapy and . . . any massage of [Doe] was not intended in any way to treat [her] hip pain (and thereby

-11-

serve the VA) but rather motivated wholly by Luchtefeld's personal desires."); *id.* ("[A]ll evidence and inferences here point to Luchtefeld's purely personal desire. Indeed, [Doe] apparently did not believe that Luchtefeld's contact with her genitalia and breasts was part of her treatment, as she stopped [him] from engaging in such contact and immediately attempted to report the incident. And according to [Doe], Luchtefeld attempted to interfere with [Doe] reporting [the incident], suggesting that he did not want his employer to learn of the incident.").

Doe also relies on *Daugherty v. Allee's Sports Bar & Grill*, 260 S.W.3d 869 (Mo. Ct. App. 2008). She argues that *Daugherty* "provides a clear understanding of the 'course and scope' analysis under Missouri law." Appellant's Br. at 39. Doe construes *Daugherty*'s holding that "an employer is liable for an employee's torts even if the employer did not authorize the employee's conduct as long as the employee committed such act while engaged in an activity falling within the scope of the employee's authority or employment" to be a strong, favorable precedent. *Id.* (quoting *Daugherty*, 260 S.W.3d at 873 (internal quotation marks omitted)). But this holding was quoted from and applied in *P.S.*, which ultimately found that the tortfeasor's sexual misconduct was not within his scope of employment. *See Daugherty*, 620 S.W.3d at 873 (quoting *P.S.*, 887 S.W.2d at 624). The instant facts track the facts in *P.S.* better than the facts in *Daughtery*, which involved an injury caused by a bartender placing a toothpick in the plaintiff's drink.

Doe's reliance on *Henderson*, fairs no better. *Henderson* involved a violent attempt to collect a debt owed to the tortfeasor's employer. 506 S.W.2d at 434. Doe contends this case "demonstrates the Court's placing 'primary importance' on 'the nature of the principal's business,' and 'whether or not the employment will bring the employee into contact with the public,' as well as looking at motive and foreseeability." Appellant's Br. at 36–37. However, *Henderson* gave controlling weight to *Wellman*, specifically *Wellman*'s explanation and application of the Restatement (Second) of Agency, which, as previously noted, was also relied on by the district court. *Henderson*, 506 S.W.2d at 436–37.

Therefore, we find no error in the district court's analysis of relevant Missouri law.

D. *Whether Luchtefeld was Acting Within the Scope of Employment*

Third, Doe argues that the district court erred in concluding that Luchtefeld's duties were restricted to providing BFA. She argues that the evidence showed that Luchtefeld had full authority as her primary care provider. She asserts that Luchtefeld had authority to use his discretion to provide all non-surgical care for her hip pain. Doe also challenges the overall finding that Luchtefeld was not acting within the scope of his employment.

After allowing limited discovery, the district court concluded that Luchtefeld's treatment authority was limited to BFA therapy. Further, as explained above, the district court found that Doe's injuries arose specifically out of Luchtefeld's physical contact with her genitalia and breasts and that such contact was motivated by a purely personal desire. Based on these findings, the district court determined that Luchtefeld was not acting within the scope of his employment.

These findings were not clearly erroneous. Viewing the record as a whole, "we are not left with the definite and firm conviction that a mistake has been committed." *United States v. Finley*, 612 F.3d 998, 1003 (8th Cir. 2010).

Initially, Luchtefeld denied sexually assaulting or massaging Doe. He later admitted to the sexual assault and admitted that it was inappropriate for him to massage a patient. He also failed to document anything that occurred after the BFA therapy, including the massage. This is consistent with the finding that the massage and subsequent sexual assault exceeded the scope of his treatment authority.

The record also indicated that Luchtefeld was breathing hard while he touched Doe and that he had an erection after committing the sexual assault. It also indicates that he attempted to prevent Doe from reporting the incident to his superiors. He even admitted to touching her vagina because he "got kind of excited." R. Doc. 34-5, at 4.

Additionally, he was not wearing gloves when he began massaging her. This supports the finding that the massage and subsequent sexual assault were motived by Luchtefeld's personal desires, not any effort to treat Doe.

Doe also challenges four affidavits provided by the government in support of its motion to dismiss. She claims that "[s]tripped of legal conclusions and innuendo, nothing in these affidavits demonstrated that Luchtefeld's duties were strictly confined to . . . BFA[]." Appellant's Br. at 22–23. We disagree.

For example, the affidavit of Dr. Kavitha Reddy, who performed over 1,000 BFA procedures from 2017 to 2020, indicated that BFA appointments are limited to providing BFA therapy and that no additional therapies are provided. It also noted that BFA only requires the provider to touch the patient's ears. R. Doc. 10-4.

Similarly, the affidavit of Licensed Acupuncturist Laura Devaney, who was the BFA Program Coordinator for the St. Louis VA Medical Center, detailed a seven-step protocol for completing BFA. None of the steps require giving massages. In fact, after the procedure the provider "encourages a patient to stand and move the painful body region." R. Doc. 10-3, at 3.

The affidavit of Associate Chief Nurse Pamela Becker Weilitz, which Doe relies on, provides a broad explanation of Luchtefeld's duties. However, Weilitz's affidavit indicated that Luchtefeld did not have chiropractor core privileges and was not a designated Woman's Health Provider. This meant that he could not "perform massages as part of his duties" and that "the VA would not have scheduled him to provide Well Woman Exams for routine, annual examinations." R. Doc. 10-2, at 4.

In light of the pleadings and undisputed evidence, the district court did not err determining that Luchtefeld acted outside the scope of his employment.

Doe reasserts that the district court's analysis would result in no FTCA claims moving forward because "negligence (nor intentional tort) is never a stated part of the

scope and practice of an employee." Appellant's Br. at 32. But the opinion in *Cluck* is instructive. There, a railroad employee carried a loaded firearm in his luggage, which accidently discharged and struck another employee's knee. *Cluck*, 367 S.W.3d at 27. The injured employee sued the railroad. *Id.* The *Cluck* court, in explaining Missouri's *respondeat superior* principles, relied on *Daugherty* and *Lavender v. Illinois Central Railroad Co.*, 219 S.W.2d 353 (Mo. 1949), to hold that the act causing the injury must be in furtherance of the employer's business. *Id.* at 29.

Notably, the plaintiff in *Cluck* argued that such holding "is unfair, for an employer will seldom have ordered the employee to perform the negligent act, and, therefore, the negligent act will almost never be found to be in furtherance of the employer's interests." *Cluck*, 367 S.W.3d at 29–30. The *Cluck* court stated:

> This argument misconstrues the standard. As *Lavender* explained:
>
>> "In order for the master to be liable, it is, of course, not necessary that the servant or servants at fault have the authority of the master to do the particular thing which was done. Under certain circumstances the master may be liable if the act of the servant was contrary to the master's express orders. But to hold the master liable the act must always have been done in furtherance of the master's business."

*Id.* at 30 (quoting *Lavender*, 219 S.W.2d at 357–58). Under Missouri law, the focus is on whether the act was done in furtherance of the business, not whether the act was defined within an employee's duties. Indeed, Doe quoted a similar holding from *Daugherty*, as stated above. The district court's findings were not clearly erroneous.

## III. *Conclusion*

Accordingly, we affirm the district court's grant of the government's motion to dismiss for lack of jurisdiction due to the unavailability of the FTCA's waiver of the United States' sovereign immunity.

_____